# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HONGYI YU,<br>1273 Briarberry Ct<br>San Jose, CA 95131, | )<br>)<br>)<br>)    Case No. _____<br>) |
| BARBARA McGIVNEY,<br>1808 Cornell Dr.<br>New Lenox, IL 60451, | )<br>)<br>)<br>) |
| on behalf of themselves and all others similarly situated; | )    Hon. _____<br>) |
|      Plaintiffs, | )<br>) |
|      v. | )<br>)    **CLASS ACTION** |
| INPHONIC INC.<br>1010 Wisconsin Ave.<br>Washington, DC 20007 | )<br>)<br>)    **JURY TRIAL DEMANDED** |
|      Defendant. | )<br>) |

## INTRODUCTION

Plaintiffs, Hongyi Yu ("Yu") and Barbara McGivney ("McGivney"), by and through their attorneys of record, hereby file this Class Action Complaint ("Complaint") on behalf of themselves and all similarly situated customers of Defendant, Inphonic, Inc. ("Inphonic"). Plaintiffs alleges upon personal knowledge as to themselves and their own acts, and upon information and belief based on the investigation of their counsel as to all other matters, as follows:

## PARTIES

1.      Plaintiff, Hongyi Yu, is a resident of the State of California who purchased a mobile phone and wireless phone services through Inphonic.  Mr. Yu applied for, but never received the rebate described in this Complaint and offered by Inphonic.

2.      Plaintiff, Barbara McGivney, is a resident of the State of Illinois who purchased a mobile phone and wireless phone services through Inphonic.  Ms. McGivney applied for, but never received the rebate described in this Complaint and offered by Inphonic.

3.      Defendant is a Delaware corporation.  Inphonic's corporate headquarters are located in Washington, DC, and Defendant widely promotes this fact as part of its corporate profile and brand identification.  Each of the wrongful trade and business practices alleged in this Complaint emanated from and had a nexus with Washington, DC.

## FACTUAL ALLEGATIONS

4.      This class action concerns a sophisticated internet retailer that has become a market leader in the sale of mobile phones and wireless services by offering rebates that purport to reduce prices below that of the competition.  The online market for mobile phones and mobile phone service among third-party retailers is one of the most competitive because each retailer carries identical products and services.  As a result, *price* is the primary factor in consumer purchasing decisions.

5.      Inphonic advertises low *after-rebate* sales prices to solicit clients though various Internet websites that it owns and/or operates, through in-store advertisements at major retailers, and through e-mail and Internet advertisements.  For example, customers visiting Inphonic's Wirefly or Cellular Choices websites are told that a popular new phone, the RAZR V3c, will be **"FREE after rebate with a new Verizon Wireless account."**  For many consumers, this will be a far more attractive option than purchasing the identical phone directly from Verizon Wireless

for $129.99. Similarly, most customers will find Inphonic's offer for a Motorola i836 phone, advertised as "Free after rebate" on Radio Shack's website, to be superior to Nextel's offer to sell the same phone for $149.99. The low prices, however, assume that the customer receives the promised rebates.



6.     Inphonic advertises many of its phones as **"Better than Free."** Potential customers are told that by purchasing certain phones through Inphonic, they will be entitled to a refund of up to $100.00. Inphonic's various sites tout that by buying certain phones "**You make $50.00.**" Another phone is advertised "**FREE Plus $60 Cash Back.**" All of these tempting offers depend upon the customer obtaining promised rebates.

3

| Click to Compare | Carrier Phone | Camera Phone | Weight | Price Today | Price After Rebates | Select |
|---|---|---|---|---|---|---|
| ☐ [ubmit Quer] | Motorola V276 (Camera Phone) | Yes, VGA-quality (640 x 480 Pixels), Self-timer | 3.77 oz | $0.00 | You make $60.00 | [Select >] |

7.     Based upon these promised rebates, Inphonic's Wirefly division asks consumers to "Compare for yourself and you'll find nobody beats Wirefly's prices—on the Internet, in local stores or anywhere else." Inphonic's after-rebate prices allow it to beat all competitors in online price comparisons. According to Inphonic's own data, currently 70-80% of consumers research wireless service online.

8.     Inphonic advertises its post-rebate prices heavily on virtually all search engines and other websites. For example, a search on Google for RAZR finds the following two Inphonic advertisements.

Free Motorola **Razr** v3
www.cellularchoices.net    after $100 rebate with Cingular.
Verizon **Razr** also available here.

Free Motorola **Razr** V3
Choose black or silver. Bluetooth,
VGA camera. Free Shipping.
www.myrateplan.com

9.     The unfair and deceptive practices trade practices alleged in this Complaint allow Inphonic to claim lower prices than its competition and to dominate the online wireless market. As of March 2006, Inphonic claims that it is the "leading marketer and seller of wireless services on the internet," having achieved 1.1 million service activations in 2005. Inphonic represents

4

33% of the US online wireless activation market, versus 58% for the carriers, and only 9% for all others combined.

10.    Inphonic's Wirefly division claims that it is the number one seller of wireless phones and services on the web and one of the top five electronic websites. Inphonic's unfair and deceptive practices have led to exponential revenue growth, including a 107% jump in revenue between 2004 and 2005. Between 2004 and 2005, activations increased by 48%. Inphonic's expansion is partly carried out through major online retailers, such as Circuit City, Staples and RadioShack. Its marketing partners include Google, Yahoo, MSN, Buy.com, AOL, Sam's Club, and RadioShack. Inphonic retails through its owned brands and over 6,000 private label partners.

11.    Inphonic's growth and revenue derives in part from its development of business practices that limit the ability of customers to actually obtain promised rebates. Given the large size of promised rebates – up to $500 for many families – the rebate offer plays a primary role in purchasing decisions. Meanwhile, Inphonic is rewarded handsomely when rebates go unfulfilled or rejected.

12.    Customers make his or her purchasing decisions based upon the information presented in Inphonic's websites and online advertisements, and the actual purchase is made online. For example, Inphonic's websites allow customers to provide credit card information and enter into final, binding contracts. At the time the contract is entered into, consumers are given every reason to believe that they will ultimately receive the promised rebate.

13.    Inphonic's rebate offers fail to disclose that its rebates are subject to numerous material limitations. Thus, at the time of purchase, customers have no way of knowing that in fact the rebate offer that played a central role in their purchasing decision is subject to significant limitations and therefore may be illusory. These undisclosed limitations make the rebate offers

unfair and deceptive and are part of a sophisticated scheme to avoid paying rebates. Indeed, Inphonic conducts ongoing tests of its rebate offers in an effort to develop those that are most effective – most attractive for potential customers and the most difficult to redeem. The undisclosed limitations on Inphonic's rebates are disclosed below.

14.    ***Undisclosed limitation 1: Customers requesting a rebate will be required to agree to false statement of facts.***[1] For some or all of the Class Period, customers seeking to redeem a rebate were required to sign a statement agreeing to false statements of fact.

15.    For example, one widely used rebate form required the customer to sign a statement that read materially as follows:

> "In addition to this rebate, an equipment purchase discount of $250 has been provided to you in exchange for activating and maintaining a new, non-substitute wireless service mobile number on any commercially published wireless service rate plan for a minimum of 181 consecutive days."[2]

16.    This mandatory statement is, in fact, false and misleading because customers do ***not*** receive an equipment purchase discount of any amount. At the time of purchase, customers are told the "Price Today" or "Your Price", and the "Price After Rebates." The difference between these two numbers is the amount of the rebates. Having informed customers of the "Price Today" and "Your Price", they cannot later state that a higher price applied and was only reduced by a previously undisclosed "discount." Requiring customers to agree to this false factual statement as a condition of receiving a promised rebate renders the offer unfair and

---

[1]    Inphonic has made ongoing changes to its rebate offers during the Class Period, but ***all*** of the rebate offers entered into by Class members suffered from one or more of these material undisclosed limitations.

[2]    Some customers receive a rebate form stating that the equipment purchase discount is $150.

deceptive, and illusory for that segment of the customer base that is unwilling to agree to a false and misleading statement of fact as a condition of receiving a promised rebate.

17.    ***Undisclosed limitation 2:  Customers requesting a rebate will be required to agree to new and unfair contract terms.***    Rebate forms also required customers to agree to new, unfair contract terms as a condition of obtaining the rebate.  One widely used form stated:

> "Should the number disconnect (permanently or temporarily, except based on the fault of the Wireless Service carrier) from the chosen Wireless carrier, or if the customer's wireless service rate plan is changed to one of a lower service rate plan, with the same period (181 consecutive days), both this discount and the rebate will be null and void and the customer must reimburse this Authorized Carrier Representative $250.  ***The customer herein provides authorization for the $250 to be charged to the customer's credit card without need for further approval***; the $250 will only be charged if the monthly service rate is changed to one of a lower monthly service rate or if the wireless phone bill is not paid for 181 consecutive days.
>
> ***I authorize that this $250 can be charged to my credit card and in the event that any legal action is necessary to collect the amount due I agree to pay any legal fees, collection fees, and court costs.***"[3]

18.    Customers requesting a rebate were required to authorize the automatic refund a non-existent equipment purchase discount and agree to pay legal costs incurred by the company in obtaining the refund.  These previously-undisclosed requirements render the original rebate offer unfair and deceptive, and illusory for that segment of the customer base that is unwilling to agree to a new and unfair contract term as a condition of receiving a promised rebate.

19.    ***Undisclosed limitation 3:  Rebate is null and void if Inphonic does not receive payment within 30 days.***    The rebate form also stated for the first time that "This rebate will be

---

[3]    Customers whose rebate form claims an "equipment purchase discount" of $150 will require the customer to agree that $150 can be charged to their debit card.

null and void if all balances owed to Inphonic Inc. are not paid in full within 30 days of purchase date."

20.    All Inphonic customers are harmed by Inphonic's rebate requirements, including the requirement that customers agree to false and misleading factual statements and new and unfair contract terms as a condition of claiming the rebate. In addition, a significant portion of customers are prevented from obtaining promised rebates because of these practices.

21.    *Undisclosed limitation 4: Inphonic fails to timely distribute forms and information required for rebate requests.* On a consistent basis, Inphonic fails to provide a significant portion of its customers with the information needed to redeem promised rebates including the proper rebate forms. Customers who do not receive the proper rebate forms find it virtually impossible to obtain the promised rebates, in part because of the poor customer service described below. During some or all of the Class Period, customers visiting the Inphonic website found that that they could not access correct, up-to-date rebate forms. A significant portion of customers is unable to receive promised rebates because of Inphonic's failure to timely provide needed information and proper rebate forms.

22.    *Undisclosed limitation 5: Inphonic's customer service is so poor that it materially limits customers' ability to request rebates.* During the Class Period, Inphonic failed to provide customer service telephone numbers, failed to timely respond to customers' e-mails, and failed to timely respond to customer service inquiries and complaints. Inphonic's customer service fell far below industry standards and was contractually inadequate given Inphonic's extremely short and inflexible timelines for perfecting rebate applications. A significant number of customers were prevented from obtaining rebates because of Inphonic's poor customer service.

23.    During a portion of the Class Period, Inphonic's websites provided no customer service telephone number or other method for making timely contact with the company.

24.    During some or all of the Class Period, customers were given no avenue for customer service other than by sending an e-mail to the company detailing their complaint. The e-mail form provides several complaints to choose from, including that the rebate forms were not sent. However, Inphonic fails to promptly respond to these email inquiries and fails to promptly provide rebate forms.

25.    ***Undisclosed limitation 6:  Customers are not allowed to correct a minor error in the rebate request.***  When a customer submits a rebate application with a minor error or omission, Inphonic fails to provide the customer any opportunity to correct the error. For example, Inphonic consistently informs customers of minor errors and omissions in the rebate requests only after the narrow rebate window has closed.  This business practice has deprived a significant portion of customers from their promised rebates.

26.    ***Undisclosed limitation 7:  A portion of customers will not receive necessary paperwork from the wireless companies in time to request a rebate.***  Inphonic fails to disclose that the customer may find it impossible to comply with the inflexible deadlines for the rebate. For example, some of Inphonic's rebate forms require submission of the first, second and third wireless bills showing all balances paid in full, and requires that the third bill be dated within 120 days of the purchase date.  The rebate form then must be postmarked within 120 days of activation date.  Inphonic does not disclose to customers that a significant portion of customers will not receive their third bill from the wireless company in time to meet this deadline, or the third bill will not show the balance paid in full due to billing practices of the wireless carriers. These requirements and similar requirements imposed during the Class Period prevented a significant portion of customers from obtaining the promised rebates.

9

27.     *Undisclosed limitation 8: Inphonic does not promptly process rebate requests.* The rebate forms state that rebate checks will be received by customers within 10 to12 weeks of Inphonic's receipt of the customer's rebate requests.  Inphonic neither complies with this deadline nor processes rebate requests promptly.  This policy of delay causes significant harm to members of the Class and allows Defendant to enjoy undeserved profits in the form of interest and un-cashed rebate checks.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5 million and the parties reside in diverse jurisdictions.  Venue is appropriate in this District because Inphonic is headquartered in the District of Columbia and the acts alleged herein emanated from the District of Columbia.

## CLASS ACTION ALLEGATIONS

### In Support of Certification of Classes in under Rule 23(b) (1), 23(b) (2) and 23(b) (3)

29.     Plaintiffs brings this action individually and on behalf of the following similarly situated classes of Inphonic customers (collectively the "Classes"):

**Rebate Term Class:**  Customers who entered a contract with Inphonic for the purchase of a wireless phone and/or wireless services on or after May 19, 2003 whose contract included a rebate offer which was later found to be conditional upon the customer's agreement to false statements of fact and/or additional contract terms.

**Rebate Deprivation Class:**  Customers who entered a contract with Inphonic for the purchase of a wireless phone and/or wireless services on or after May 19, 2003 whose contract included a rebate offer and who were unable to receive such rebate due to one or more undisclosed material limitations on the rebate offer, including those described herein.

30.     The number of persons who are members of the Classes described above are so numerous that the joinder of all members in one action is impracticable.

31.    Questions of law and fact that are common to the entire Classes predominate over individual questions because the actions of Inphonic complained of herein were generally applicable to the entire Classes.

32.    All questions as to the representations and publicly disseminated advertisements and statements attributable to defendant at issue herein are similarly common. A determination of Inphonic's knowledge regarding the misleading and deceptive nature of its rebate offers, its concealment of material limitations of its rebate offers, and its business practices depriving customers of rebates are likewise common. A determination of liability as to the deceptive and misleading statements and representations and practices relating to Inphonic's marketing and promotion of its products and services, and rebate offers, its concealment of material information relating to the rebate offers, and its breach of contract will also be applicable to all members of the Classes. Further, whether Inphonic violated any applicable state or federal laws and pursued the course of conduct complained of herein, whether Inphonic acted intentionally or recklessly in engaging in the conduct described herein and the extent of the appropriate measure of injunctive and declaratory relief, damages and restitutionary relief are common questions to all Classes.

33.    Plaintiffs' claims are typical of the claims of the members of the Classes because Plaintiffs purchased wireless phones and wireless services through Inphonic during the Class Period, and Plaintiffs are members of both the Rebate Term Class and Rebate Deprivation Class. Plaintiffs purchased products or services from Inphonic in reliance on the rebate offers and unaware of the conditions imposed on the rebate forms, and unaware of the material limitations on such offers. These undisclosed material limitations ultimately deprived Plaintiffs and the members of the Classes of the promised rebates.

34.    Plaintiffs will fully and adequately represent and protect the interests of the Classes because of the common injuries and interests of the members of the Classes and the

singular conduct of Inphonic that is or was applicable to all Class members.  Plaintiffs have retained counsel who is competent and experienced in the prosecution of class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those of the members of the Classes they seek to represent.

35.     A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

36.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Inphonic under the laws alleged herein.

37.     The claims of the Rebate Term Class should be certified under Rule 23(b)(1) and/or 23(b)(2) because that Class's claim focuses on the enforceability and legality of the terms imposed upon the rebate offers and proper remedies.   The Rebate Term Class primarily seeks declaratory and injunctive relief and separate actions would risk setting incompatible standards of conduct or could in a practical matter impair the interests of non-parties.

38.     The claims of the Rebate Deprivation Class may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3).  The members of this Class also seek declaratory and injunctive relief but also seek sizeable monetary recovery equal to the rebates of which the members of this Class were deprived.

## **FIRST CAUSE OF ACTION**

### **(Violations of District of Columbia Code Ann. § 28-3901)**

39.     Plaintiffs incorporate by reference Paragraphs 1-38 of this Complaint.

40.    In this Complaint, Plaintiffs allege a nationwide class alleging violations of the District of Columbia Consumer Protection Act ("Act") on behalf of themselves, Class members, and the general public.

41.    The purpose of the Act is to assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices, to promote fair business practices throughout the community, and to seek proper redress of grievances. D.C. Code Ann. § 3901(b). The Act is construed and applied liberally to promote these purposes. *Id.* The business and trade practices of Inphonic, as alleged herein, constitute unfair and unlawful trade practices under D.C. Code Ann. § 28-3901(a)(6).

42.    The Act states in pertinent part:

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

(e)    misrepresent a material fact which has a tendency to mislead;

(f)    fail to state a material fact if such failure tends to mislead;...

(h)    advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; ...

(j)    make false or misleading representations of fact concerning the reasons for, existence of, or price reductions, or the price in comparison to price of competitor's or one's own price at a past or future time; ...

(r)    make or enforce unconscionable terms or provisions of sales or leases.

D.C. Code Ann. § 28-3904.

43.    Pursuant to the Act, a person, whether acting for the interest of itself, its members, or the general public, may bring an action for relief from unlawful trade practice and may seek the following remedies:

(A)    treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

(B)    reasonable attorneys fees;

(C)     punitive damages;

(D)     an injunction against the use of the unlawful trade practices;

(E)     in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practices; or

(F)     any other relief which the court deems proper.

D.C. Code Ann. § 28-3905(k)(1).

44.     Plaintiffs and Class Members have suffered and continue to suffer damages as a result of Defendant's use or employment of unlawful trade practices and are "consumers" within the meaning of, and are entitled to bring this class action, under D.C. Code Ann. § 28-3905.

45.     The conduct of Defendant, as alleged in this Complaint, constitutes deceptive and unfair methods of competition and/or trade practices, all impacting the public interest, in violation of D.C. Code Ann. § 28-3904. For example, but not by way of limitation, Inphonic's rebate practices contain both misrepresentations and omissions of material facts that tend to mislead and constitute a misleading representation of price reductions and comparison of prices in comparison to competition. Inphonic advertises after-rebate pricing and rebate programs that are contrary to its own intent to obstruct consumers' attempts to obtain promised rebates. Its representations that customers have received equipment discounts are false or misleading representation of fact about its own price at a past or future time. In addition, the terms of its rebate offers – once the fine print arrives in the mail -- are unconscionable, especially in the context of Inphonic's reliance upon after rebate pricing in its marketing.

46.     As a direct and proximate result of such wrongful activity, Plaintiffs and Class members have suffered and will continue to suffer substantial damages and Inphonic has been and will be unjustly enriched.

14

47.    The harm to each Class member, regardless of his or her residence in the United States, emanated from the District of Columbia, where Inphonic is headquartered.  Each of the consumer transactions alleged herein emanated from and have a nexus with the District of Columbia.  Thus, the Act applies to every the claims of every Class member, regardless of their location.

48.    Under the Act, Plaintiffs and Class Members are entitled to the greater of treble damages or $1,500 per violation, punitive damages, disgorgement of profits, recovery of reasonable attorneys' fees, and injunctive relief.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

49.    Plaintiffs incorporate by reference Paragraphs 1-48 of this Complaint.

50.    During the Class Period, Plaintiffs and each Class member entered into a contract with Inphonic that included a rebate offer.

51.    Inphonic has uniformly breached its contracts with Plaintiffs and the members of the Classes by (a) using its rebate forms to acquire agreement to false factual statements and new contract terms; (b) failing to disclose all material limitations on its rebate offers; (c) developing and implementing business practices that were designed to and that did deprive customers of their rebates; and (d) failing to act in good faith in its business practices with customers.

52.    As a proximate result of the aforementioned wrongful conduct and breach committed by Inphonic, Plaintiffs and Class members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.  Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## THIRD CAUSE OF ACTION

### (Negligent Misrepresentation)

53.    Plaintiffs incorporate by reference Paragraphs 1-52 of this Complaint.

54.    During the Class Period, Inphonic negligently and/or recklessly misrepresented its rebate offers and their limitations, its business practices designed to avoid payment of rebates, thereby making false, deceptive and illusory the benefit of the bargain to be received by Plaintiffs and the members of the Classes.

55.    These representations were negligently or recklessly made to potential customers and the general public through uniform representations on the Internet and by other means. As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and Class members have been damaged.

56.    Plaintiffs and Class members reasonably and actually relied upon the representations of Inphonic.  Based on such reliance, Plaintiffs and Class members purchased wireless phones and/or wireless services and as a result of Defendant's improper conduct have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

57.    Inphonic's acts and misconduct, as alleged herein, constitute oppression, fraud, or malice, thereby entitling Plaintiffs and Class members to recover an award of punitive or exemplary damages to the extent allowed in an amount appropriate to punish or to set an example of Inphonic.

58.    Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## FOURTH CAUSE OF ACTION

### (Fraudulent Misrepresentation, Concealment and Failure to Disclose)

59.     Plaintiffs incorporate by reference Paragraphs 1-58 of this Complaint.

60.     Inphonic knowingly, fraudulently and actively misrepresented, omitted and concealed from consumers material facts relating to its rebate offers, including their material limitations and the existence of business practices designed to avoid payment of rebates.

61.     The misrepresentations, omissions and concealments complained of herein were made on a uniform and market-wide basis.  As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and Class members have been damaged, as alleged herein.

62.     Plaintiffs and Class members reasonably and actually relied upon Inphonic's representations, omissions and concealments.  Such reliance may also be imputed, based upon the materiality of Inphonic's wrongful conduct.

63.     Based on such reliance, Plaintiffs and Class members purchased wireless phones and/or wireless services service from Inphonic and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

64.     Inphonic's acts and misconduct, as alleged herein, constitute oppression, fraud, or malice entitling Plaintiffs and Class members to an award of punitive or exemplary damages to the extent allowed in an amount appropriate to punish or to set an example of Inphonic.

65.     Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment and Disgorgement of Profits)

66.     Plaintiffs incorporate by reference Paragraphs 1-65 of this Complaint.

17

67.    Defendant has been unjustly enriched by overpayment by Plaintiffs and Class members and the resulting profits.

68.    Under common law principles of unjust enrichment, Defendant should not be permitted to retain the benefits of this unjust enrichment.

69.    Plaintiffs and Class members seek disgorgement of all profits resulting from such overpayment and the establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## SIXTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief)

70.    Plaintiffs incorporate by reference Paragraphs 1-68 of this Complaint.

71.    Plaintiffs and Class members are entitled to declaratory relief establishing that Defendant is engaging in unfair and deceptive practices, that its conduct constitutes negligent and intentional misrepresentation and/or concealment and breaches contracts with consumers and violates applicable tariffs.

72.    Plaintiffs and Class members are entitled to a declaration that the false factual statements and additional contract terms included on the rebate forms are unenforceable. Inphonic should be enjoined from enforcing the additional contract terms or relying upon false statements of facts agreed to in the rebate forms.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Inphonic as follows:

1.    For economic and compensatory damages on behalf of Plaintiffs and all members of the Classes.

2.    For restitution;

18

3.      For disgorgement of ill-gotten gains as set forth herein;

4.      For treble damages or $1,500 per violation, whichever is greater, under D.C. Code Ann. § 28-3901.

5.      For punitive damages, as otherwise applicable;

6.      For injunctive and declaratory relief, as claimed herein;

7.      For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

8.      For such other and further relief as this Court deems just and appropriate

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 19, 2006

Respectfully Submitted,


By:_____
        Steven N. Berk


Jonathan W. Cuneo (DC Bar 939 389)
Steven N. Berk (DC Bar 432870)
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

Knoll Lowney
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, WA 98112
Telephone:  (206) 860-2883
Facsimile:   (206) 860-4187

Kevin P. Roddy
Jennifer Sarnelli (D.C. Bar No. 488512)
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095-0958
Telephone:  (732) 636-8000
Facsimile:  (732) 726-6686

**Attorneys for Plaintiffs**