RECEIVED
CLERK'S OFFICE

2006 JUL 25  P 2: 44

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE INPHONIC, INC. WIRELESS PHONE REBATE LITIGATION | MDL No. 1792 |

### REPLY MEMORANDUM OF INPHONIC, INC. IN SUPPORT OF ITS MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

Pursuant to JPML Rule 7.2(d), Defendant InPhonic, Inc. ("InPhonic") respectfully submits this reply in support of its Motion for Transfer and Consolidation of Related Cases Pursuant to 28 U.S.C. § 1407.

### INTRODUCTION

All parties to these related actions agree that pre-trial transfer and consolidation pursuant to 28 U.S.C. § 1407 is necessary and appropriate. The parties disagree only about the judicial district that they believe is the most appropriate transferee forum. All defendants and some plaintiffs have proposed the United States District Court for the District of Columbia ("D.D.C."), before the Honorable Ellen Segal Huvelle. Other plaintiffs have proposed the United States District Court for the District of Arizona, before the Honorable Mary H. Murguia. InPhonic respectfully submits that Panel precedent decidedly favors transfer to the D.D.C., and consolidation before Judge Huvelle, because:

1

- The Attorney General of the District of Columbia has brought a parallel lawsuit in the Superior Court of the District of Columbia (the "DCAG Action"), and that local court case cannot be consolidated into the federal MDL proceedings. Coordination of the overlapping federal actions and the DCAG Action is highly desirable, to avoid duplication of discovery and other pre-trial efforts. The District of Columbia federal court (and Judge Huvelle specifically) is in the best position to coordinate the federal actions with the D.C. Superior Court. Judge Huvelle is a former judge of the D.C. Superior Court, which is literally across the street from the federal courthouse.

- Judge Huvelle already is presiding over three related lawsuits against InPhonic, including the first-filed lawsuit.

- InPhonic is headquartered in Washington, D.C., and has its two operational facilities in the Washington, D.C. suburbs. InPhonic documents and witnesses therefore are readily accessible for discovery taken in the D.D.C.

- The focus of all of the related lawsuits is on InPhonic, which is a defendant in every count of every complaint. Continental Promotion Group, Inc. ("CPG")—on which certain plaintiffs have focused their arguments for transfer to Arizona—is a defendant in just five of the eight related lawsuits identified to date, and is named in only one of the multiple claims for relief in each such lawsuit. The class definitions in all of the related lawsuits are functionally the same.

- A majority of the parties (7 of 12) propose that the related cases be transferred to the D.D.C. and consolidated before Judge Huvelle. There is a split—not a consensus— among the plaintiffs regarding the appropriate transferee court.

- Docket conditions in the D.D.C. are well suited for the expeditious handling of consolidated pre-trial proceedings.

## ARGUMENT

I.   **The United States District Court for the District of Columbia is the Most Familiar with the Issues Presented in These Cases and is Best Able to Expedite the Pre-Trial Proceedings.**

A.   **The D.D.C. and Judge Huvelle are in the Best Position to Coordinate the Federal Lawsuits with the Parallel Local Court Lawsuit Brought by the Attorney General of the District of Columbia.**

"We have frequently held that the pendency of a related government action in a particular district is an important factor in selecting the transferee forum." *In re Sugar Industry Antitrust Litig.*, 395 F. Supp. 1271, 1274 (J.P.M.L. 1975); *accord In re Toilet Seat Antitrust Litig.*, 387 F. Supp. 1342, 1344 (J.P.M.L. 1975); *In re West Coast Bakery Flour Antitrust Litig.*, 368 F. Supp. 808, 809 (J.P.M.L.

1974). That principle applies here. The DCAG Action, in which the Attorney General of the District of Columbia has sued InPhonic under the D.C. consumer protection statute, cannot be removed from the Superior Court of the District of Columbia or consolidated with the related federal lawsuits as part of the MDL process. *See* Memorandum of Law in Support of Motion for Pretrial Transfer and Consolidation Pursuant to 28 U.S.C. § 1407 of Defendant InPhonic, Inc. ("InPhonic Mem."), JPML Dkt. #1, at 14.[1] The complaint in the DCAG Action makes factual allegations similar to those in all of the federal putative class actions, and purports to be brought on behalf of "consumers throughout the United States." *Id.*; DCAG Compl., ¶ 1 (copy attached as Exhibit 1).

When a parallel state court action is proceeding simultaneously with separate MDL-consolidated actions, the Panel often facilitates coordination of federal-state pre-trial matters like discovery by transferring the MDL actions to the venue where the local action is pending. InPhonic Mem., at 14; *accord In re Oil Spill by "Amoco Cadiz" Off Coast of France on Mar. 16, 1978*, 471 F. Supp. 473, 478-79 (J.P.M.L. 1979) ("Additionally, the related actions that are pending in the Illinois state courts can be coordinated with the federal proceedings there. The possibility of promoting this state/federal coordination is another factor favoring the selection of the Northern District of Illinois as the transferee forum."); *In re Sundstrand Data Control, Inc. Patent Litig.*, 443 F. Supp. 1019, 1021 (J.P.M.L. 1978) ("'[S]ince certain parties maintain that the action now pending in Washington state court is related to the federal actions, that action could, if appropriate, be coordinated with the federal actions. This possibility of promoting state/federal coordination is another factor favoring the selection of the Western District of Washington.").

---

[1] The Plaintiffs seeking consolidation in the District of Arizona ignore the issue of coordinating the MDL 1792 actions with the DCAG Action.

The D.D.C., and Judge Huvelle specifically, is in the best position to coordinate the MDL actions with the DCAG Action. <u>First</u>, Judge Huvelle already is presiding over the greatest number (three) of the related cases—(*Davis, Hongyi Yu*,[2] and *Salzman*[3])—against InPhonic that can be transferred and consolidated pursuant to 28 U.S.C. § 1407.[4] Of these three lawsuits, *Davis* was the first filed, as all parties recognize. InPhonic Mem., at 4, 13-14.[5]

<u>Second</u>, before being appointed to the federal bench in 1999, Judge Huvelle spent nine years as an Associate Judge of the Superior Court for the District of Columbia. *See* http://www.dcd.uscourts.gov/huvelle-bio.html. Judge Huvelle therefore has the familiarity with D.C. Superior Court procedures that is needed to facilitate pre-trial coordination between the MDL actions and the DCAG Action. Moreover, the D.C. Superior Court is literally across the street from the D.D.C. courthouse. InPhonic Mem., at 15; *accord* JPML Dkt. #8 (Response of Plaintiffs Davis, Hongyi Yu, McGivney, Rock, and Kazmarck), at 3.

---

[2]      *Hongyi Yu* was originally assigned to Judge Royce C. Lamberth, but subsequently was transferred to Judge Huvelle pursuant to the related case procedures of the D.D.C. *See* InPhonic Mem., at 4; *Hongyi Yu* Docket Sheet, June 28, 2006 entry ("Case Reassigned to Judge Ellen S. Huvelle. <u>Judge Royce C. Lamberth no longer assigned to the case.</u>" (emphasis added)). The plaintiffs seeking centralization in Arizona incorrectly list *Hongyi Yu* as still pending before Judge Lamberth. *See* JPML Dkt. #9 (Response of Plaintiff Cover), at 12, Schedule of Actions; JPML Dkt. #10 (Response of Plaintiff Morales), Exh. A, Schedule of Actions; JPML Dkt. #11 (Response of Plaintiff Roquemore), Exh. A, Schedule of Actions; JPML Dkt. #12 (Response of Plaintiff Sutherland), Exh. 1, Schedule of Actions.

[3]      *Salzman v. InPhonic, Inc., et al.*, No. 1:06cv01266 (D.D.C.), filed July 17, 2006. *See* InPhonic's Second Notice of Related Action (filed July 25, 2006).

[4]      Accordingly, Plaintiff Sutherland no longer is correct in asserting that the District of Arizona, with three pending lawsuits, has "more than any other district." JPML Dkt. #12, at 10.

[5]      *See* JPML Dkt. #8 (Joint Response of Plaintiffs Davis, Hongyi Yu, McGivney, Rock, and Kazmarck), at 2; JPML Dkt. #9 (Response of Plaintiff Cover), Garcia Decl., ¶ 6; JPML Dkt. #10 (Response of Plaintiff Morales), at 1 (joining the Sutherland and Cover responses); JPML Dkt. #11 (Response of Plaintiff Roquemore), at 1 (same); JPML Dkt. #12 (Response of Plaintiff Sutherland), Exh. 3 (Hart Decl.), ¶ 3.

Third, InPhonic is headquartered in the District of Columbia and maintains three offices or facilities in the Washington, D.C. metropolitan area—in Washington, D.C.; Reston, Virginia; and Largo, Maryland. *See* InPhonic Mem., at 13; Declaration of Mitchell R. Berger ("Berger Decl."), ¶¶ 2, 8. InPhonic witnesses and documents are likely to be subject to discovery in both the MDL actions and the DCAG Action. It will be easiest to achieve federal-local coordination of the discovery process within the District of Columbia, where the judges and the courthouses will not be separated by time zones and great physical distance. Moreover, coordinating discovery taken from InPhonic within the District of Columbia will reduce expense and the likelihood of duplication of effort.

**B.     The Focus of the Related Cases is on InPhonic.**

Although the plaintiffs favoring consolidation in Arizona highlight their claims against Arizona-based defendant CPG,[6] the real focus of these related lawsuits is on InPhonic. InPhonic is a defendant in every count of all eight complaints, whereas CPG is named as a defendant in just five of those lawsuits, and in only one count of those five complaints.[7] Arizona is not even the judicial district of the first-filed lawsuit naming CPG; the first such lawsuit is *Sutherland*, filed in the Northern District of Illinois. The three Arizona complaints are nearly verbatim copies of the *Sutherland* complaint. Attempting to leapfrog this fact, the *Sutherland* plaintiff makes the oddly worded assertion that the District of Arizona "has the first-filed case against [CPG] and the first

---

[6]     JPML Dkt. #9 (Response of Plaintiff Cover), at 6-8; JPML Dkt. #10 (Response of Plaintiff Morales), at 2; JPML Dkt. #11 (Response of Plaintiff Roquemore), at 2.

[7]     *See Sutherland* Compl., ¶¶ 8, 49-54; *Cover* Compl., ¶¶ 8, 49-54 (1 of 7 counts); *Morales* Compl., ¶¶ 8, 49-54 (1 of 7 counts); *Roquemore* Compl., ¶¶ 8, 49-54 (1 of 7 counts); *Salzman* Compl., ¶¶ 9, 53-59 (1 of 5 counts).

filed case against InPhonic <u>alleging civil conspiracy in a requested forum</u>." JPML Dkt. #12 (Sutherland), at 10 (emphasis added).[8]

Panel precedent does not support this attempt to re-define the first-filed rule, or to focus on the nature of certain plaintiffs' legal claims as opposed to "common questions of fact." 28 U.S.C. § 1407; *see also* InPhonic Mem., at 6-9. Indeed, none of the six factors that plaintiffs identify as relevant to the transferee-court determination, *see, e.g.*, JPML Dkt. #12 (Sutherland), at 9-10, expressly or by implication adopts a rule of 'first-filed-in-a-requested-forum,' or gives weight to the nature of the plaintiffs' legal claims. *See* InPhonic Mem. at 8-9 & n.21.

Nor do the class definitions in the *Sutherland* and Arizona complaints provide a basis for favoring MDL consolidation in Arizona. Contrary to certain plaintiffs' assertions,[9] the class definitions in all of the lawsuits are functionally the same. The first-filed D.D.C. *Davis* complaint seeks to certify a class comprised of "[a]ll persons and entities who purchased goods and/or services, <u>accompanied by one or more rebates, from InPhonic, Inc., or one of its subsidiaries</u>." *Davis* Compl., ¶ 16 (emphasis added) (attached hereto as Exhibit 3); InPhonic Mem., Exh. 1. The focus is on the rebates offered by or through InPhonic. It is by no means clear that the *Davis* class definition is intended to exclude customers who sought rebates only in connection with purchases made through proprietary InPhonic websites, as opposed to "InPhonic-affiliated websites." *See, e.g.*, JPML Dkt. #12 (Sutherland), at 14. InPhonic terms and conditions apply to rebates offered both on InPhonic's proprietary Wirefly website and on InPhonic-affiliated websites. For example, a customer purchasing a wireless device with an InPhonic-sponsored rebate through the AOL website ends up on a pathway to InPhonic's proprietary Wirefly website, which references InPhonic terms

---

[8]      *Accord* JPML Dkt. #9 (Response of Plaintiff Cover), at 6-8; JPML Dkt. #10 (Response of Plaintiff Morales), at 2; JPML Dkt. #11 (Response of Plaintiff Roquemore), at 2.

[9]      JPML Dkt. #12 (Sutherland), at 14; JPML Dkt. #9 (Response of Plaintiff Cover), at 8-9; JPML Dkt. #10 (Response of Plaintiff Morales), at 2; JPML Dkt. #11 (Response of Plaintiff Roquemore), at 2.

and conditions. *See, e.g.*, http://www.aol.com (click "Shopping" link and then enter "wirefly" in Search field; click on "Motorola i870 (Video Phone)"; then click on "Customer Loyalty Mail-in Rebate" or "Customer Appreciation Mail-in Rebate").

Regardless, the plaintiffs' class definitions are subject to amendment both generally and if the transferee court requires the plaintiffs to file a consolidated master complaint. *See, e.g., In re Propulsid Products Liability Litigation*, 208 F.R.D. 133, 141-42 (E.D. La. 2002) (requiring a master consolidated complaint in MDL proceedings); MANUAL FOR COMPLEX LITIGATION § 21.15 (4th ed. 2004) ("A common practice in consolidated multiple cases, including class actions, is to encourage use of a master pleading."); *In re Career Academy Antitrust Litig.*, 342 F. Supp. 753, 754 (J.P.M.L. 1972) ("Nor are we persuaded by the California and Mississippi plaintiffs' arguments to transfer the actions to the Central District of California because eighteen of the twenty-three named plaintiffs in these actions favor that district. This argument ignores the possibility of the transferee judge establishing a class action on behalf of all franchisees."). Even if the various plaintiffs intended to use different class definitions, any such differences are unlikely to persist.

## II.    The United States District Court for the District of Columbia is the Most Convenient Forum for All Parties.

All plaintiffs seeking consolidation in Arizona have focused their allegations on InPhonic-sponsored rebates during the period 2002-2006.[10] Based on a misunderstanding of InPhonic's rebate-processing procedures and history, those plaintiffs incorrectly assert that the majority of both discoverable documents and witnesses are located in Arizona.[11] To the contrary, InPhonic

---

[10]    *See Sutherland* Compl., ¶¶ 11, 15, 19, 20, 22, 36; *Cover* Compl., ¶¶ 11, 15, 19, 20, 22, 36; *Roquemore* Compl., ¶¶ 11, 15, 19, 20, 22, 36; *Morales* Compl., ¶¶ 11, 15, 19, 20, 22, 36; *Salzman* Compl., ¶¶ 19, 20, 22.

[11]    JPML Dkt. #9 (Response of Plaintiff Cover), at 8 ("As is evident, the vast majority of physical evidence and necessary witnesses are located in Arizona . . . ."); JPML Dkt. #10 (Response of Plaintiff Morales), at 3 (incorporating *Cover* response by reference); JPML Dkt. #11 (Response of Plaintiff Roquemore), at 3 (same); *see* JPML Dkt. #12 (Response of Plaintiff Sutherland), at 11.

documents and witnesses are located in the Washington, D.C. metropolitan area. Indeed, several other plaintiffs recognize that material discovery will have to take place in the District of Columbia.[12] Moreover, CPG documents and witnesses in Arizona relate to only a small portion of the 2002-2006 time-period alleged in these complaints.

First, when a customer purchases a wireless phone online through an InPhonic owned or affiliated website, InPhonic employees at InPhonic's Reston, Virginia facility process the purchase order to determine, among other things, that the purchaser has sufficient available credit to make the purchase. Berger Decl., ¶ 2. Documents generated by this process are maintained in Reston, Virginia. *Id.* The phone equipment, rebate forms, and the written terms and conditions of the purchase and rebate offer are then shipped to the purchaser from InPhonic's facility in Largo, Maryland. *Id.* Records of these shipments are retained in Largo, Maryland. *Id.* InPhonic's officers maintain their offices at InPhonic facilities in Washington, D.C. and Largo, Maryland. *Id.*, ¶ 8.

Second, InPhonic-sponsored rebate claims were processed by InPhonic in Washington, D.C. until it retained Helgeson Enterprises ("Helgeson") as its third-party rebate processor in or around February 2003. Berger Decl., ¶ 3. The records regarding InPhonic's pre-Helgeson rebate processing are located at InPhonic's offices. *Id.* Current InPhonic employees who were involved in InPhonic's pre-Helgeson rebate processing are located in InPhonic's Largo, Maryland and Washington, D.C. offices. *Id.*

Third, Helgeson processed claims for InPhonic-sponsored rebate offers between February 2003 and October 2005. Berger Decl., ¶ 4. Documents related to the rebates processed by

---

[12]     *See* JPML Dkt. #8 (Joint Response of Plaintiffs Davis, Hongyi Yu, McGivney, Rock, and Kazmarck), at 2-3 ("[T]he District of Columbia is geographically accessible to parties and witnesses, and . . . a 'substantial portion' of the documentary evidence and several witnesses are there . . . ."). The *Hongyi Yu* and *Rock* complaints are attached hereto as Exhibits 4 and 5, respectively.

Helgeson would be located at Helgeson facilities in Minnesota. *Id.* Helgeson employees familiar with processing InPhonic-sponsored rebate claims would be located in Minnesota. *Id.*

Fourth, in or around July 2005, pursuant to a Promotion Services Agreement ("Services Agreement"), CPG began to process claims for InPhonic-sponsored rebate offers. Berger Decl., ¶ 5; JPML Dkt. #12 (Response of Plaintiff Sutherland), Exh. 4, ¶ 2. In or around July 2006, the Services Agreement expired, and InPhonic has re-engaged Helgeson to process claims for InPhonic-sponsored rebate offers. Berger Decl., ¶ 5; JPML Dkt. #12 (Response of Plaintiff Sutherland), Exh. 4, ¶ 5. Documents related to the rebates previously processed by CPG pursuant to the Services Agreement are maintained by CPG in Arizona. Berger Decl., ¶ 6. However, with court approval, CPG has agreed to transfer to InPhonic any new incoming correspondence received by CPG that relates to claims for InPhonic-sponsored rebate offers. *Sutherland* Dkt. #40. InPhonic will process those rebate claims pursuant to its current arrangement with Helgeson. Berger Decl., ¶ 6. CPG employees familiar with processing claims for InPhonic-sponsored rebates are located in Arizona. *Id.* InPhonic employees periodically visited CPG's Tempe, Arizona facilities to observe the rebate processing services performed by CPG. *Id.,* ¶ 7. However, InPhonic did not station its employees onsite at CPG on a full-time basis. *Id.* CPG documents and witnesses in Arizona relate to no more than one-quarter of the time-period at issue in these complaints.

Fifth, neither Arizona nor the District of Columbia is located in the center of the country. That immutable fact, however, carries little, if any, weight because the transferee court is likely to require that plaintiffs' lead counsel facilitate coordination among geographically dispersed plaintiffs. *See, e.g., In re Swine Flu Immunization Products Liability Litig.,* 446 F. Supp. 244, 247 (J.P.M.L. 1978) ("Although we are particularly sensitive to the arguments of certain plaintiffs for selection of a transferee district in the central part of the country in order to best facilitate the convenience of the plaintiffs, we are satisfied that the need for a central location will be minimized by optimum use of

lead counsel."). In any event, the factors considered by this Panel in choosing a transferee forum, *see* JPML Dkt. #12 (Sutherland), at 9-10, weigh decisively in favor of the District of Columbia. *See supra* at 2-9 and *infra* at 10-11.

III. **A Majority of the Parties in the Eight Related Cases Agree that the United States District Court for the District of Columbia is the Appropriate Transferee Forum and that Judge Huvelle is the Appropriate Transferee Judge.**

In determining the appropriate transferee forum, "the Panel must weigh the interests of <u>all the plaintiffs</u> and <u>all the defendants</u>," *In re Library Editions of Childern's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968) (emphasis added), as plaintiffs recognize. *See* JPML Dkt. #9 (Cover), at 11 (same); *accord Pinney v. Nokia, Inc.*, 402 F.3d 430, 451-52 (4th Cir. 2005); *In re Asbestos Products Liability Litig.*, 771 F. Supp. 415, 420 (J.P.M.L. 1991); *In re Federal Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). A majority of the parties in the eight related actions (7 of the 12[13]) support transfer to the United States District Court for the District of Columbia and consolidation before Judge Huvelle. Contrary to certain plaintiffs' assertions, there is no "consensus" even among the plaintiffs that these actions should be consolidated in Arizona.[14]

IV. **The D.D.C. Caseload Favors Consolidation in the District of Columbia.**

Docket conditions in the D.D.C. are well suited for the expeditious handling of consolidated pre-trial proceedings in these actions. <u>First</u>, the most recent caseload statistic maintained by the Administrative Office of the U.S. Courts indicates that, as of September 30, 2005: in the aggregate, far fewer cases were pending in the District of Columbia than in Arizona (4,634 vs. 7,139); far fewer cases were pending per judge in the District of Columbia than in Arizona (309 vs. 549); and the

---

[13]    *See* JPML Dkt. #1 (InPhonic), at 13-15; JPML Dkt. #7 (CPG); JPML Dkt. #8 (Plaintiffs Davis, Hongyi Yu, McGivney, Rock, and Kazmarck), ¶ 3.

[14]    *See* JPML Dkt. #12 (Sutherland), at 11; *accord* JPML Dkt. #9 (Cover), at 2; JPML Dkt. #10 (Morales), at 1-2; JPML Dkt. #11 (Roquemore), at 1. Five plaintiffs support centralization in the District of Columbia (Davis, Hongyi Yu, McGivney, Rock, and Kazmarck) and five support centralization in Arizona (Sutherland, Cover, Morales, Roquemore, and Salzman).

filing-to-disposition time in civil cases was virtually the same in both districts (10.8 months vs. 10.2 months).  *See* http://www.uscourts.gov/cgi-bin/cmsd2005.pl.  The chart below summarizes the relevant statistics:

| | D.D.C. (15 Judges) | D. Ariz. (13 Judges) |
|---|---|---|
| Cases Pending | 4,634 | 7,139 |
| Cases Pending Per Judge | 309 | 549 |
| Filing-to-Disposition (Civil) | 10.8 months | 10.2 months |

Second, Judge Huvelle is not currently presiding over any MDL proceedings.  According to the most recent statistics, as of September 30, 2005, Judge Huvelle has only one case that has been pending on her docket for more than three years.  *See* Exh. 2 (attached hereto).  Third, like Judge Murguia, Judge Huvelle is a highly respected jurist, having served on the D.C. Superior Court for nine years before being appointed to the federal bench in 1999.  *See supra* at 4.  In addition, Judge Huvelle has presided over numerous class action lawsuits involving a wide range of complex issues.  *See, e.g.,* *McReynolds v. Sodexho Marriott Servs., Inc.,* 349 F. Supp. 2d 1 (D.D.C. 2004) (class action alleging race discrimination in employment under Title VII of the Civil Rights Act of 1964); *Jach v. American Univ.,* 245 F. Supp. 2d 110 (D.D.C. 2003) (toxic tort class action); *In re Baan Co. Securities Litig.,* 271 F. Supp. 2d 3 (D.D.C. 2002) (securities fraud class action); *Bell v. Executive Committee of United Food & Commercial Workers Pension Plan For Employees,* 191 F. Supp. 2d 10 (D.D.C. 2002) (ERISA-based class action).

## CONCLUSION

For the foregoing reasons, and those stated in InPhonic's opening memorandum of law, InPhonic respectfully requests the Panel: grant InPhonic's motion pursuant to 28 U.S.C. § 1407 and transfer and consolidate the eight related actions in a single district for consolidated pretrial proceedings; designate the United States District Court for the District of Columbia as the forum for the consolidated pretrial proceedings; and transfer the eight related cases to the docket of Judge Ellen Segal Huvelle.

Dated: July 25, 2006
        Washington, D.C.

Mitchell R. Berger
Christopher W. Hellmich
Ugo Colella
**PATTON BOGGS LLP**
2550 M Street, N.W.
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendant*
*InPhonic, Inc.*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

RECEIVED
CLERK'S OFFICE

| | | |
|---|---|---|
| IN RE INPHONIC, INC. WIRELESS PHONE REBATE LITIGATION | ) ) ) ) | MDL No. 1792 |

2006 JUL 25 P 2: 44

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

### DECLARATION OF MITCHELL R. BERGER

1.      I am a member of the law firm of Patton Boggs LLP, attorneys for InPhonic, Inc. ("InPhonic") in the related actions grouped under MDL No. 1792. I respectfully submit this declaration in response to various factual assertions made on information and belief in the Declarations of Steven A. Hart and Stephen M. Garcia, counsel for the *Sutherland* and *Cover* plaintiffs, respectively. Based upon information supplied to me by InPhonic for inclusion in this Declaration, my understanding of certain facts asserted in the Hart and Garcia Declarations is as follows:

2.      When a customer purchases a wireless phone online through an InPhonic owned or affiliated website, InPhonic employees at InPhonic's Reston, Virginia facility process the purchase order to determine, among other things, that the purchaser has sufficient available credit to make the purchase. Documents generated by this process are maintained in Reston, Virginia. The phone equipment, rebate forms, and the written terms and conditions of the purchase and rebate offer are then shipped to the purchaser from InPhonic's facility in Largo, Maryland. Records of these shipments are retained in Largo, Maryland.

3.      InPhonic-sponsored rebate claims were processed by InPhonic in Washington, D.C. until it retained Helgeson Enterprises ("Helgeson") as its third-party rebate processor in or around February 2003. The records regarding InPhonic's pre-Helgeson rebate processing are located at InPhonic's offices. Current InPhonic employees who were involved in InPhonic's pre-Helgeson rebate processing are located in InPhonic's Largo, Maryland and Washington, D.C. offices.

1

4.    Helgeson processed claims for InPhonic-sponsored rebate offers between February 2003 and October 2005.  Documents related to the rebates processed by Helgeson would be located at Helgeson facilities in Minnesota.  Helgeson employees familiar with processing InPhonic-sponsored rebate claims would be located in Minnesota.

5.    In or around July 2005, pursuant to a Promotion Services Agreement ("Services Agreement"), Continental Promotion Group, Inc. ("CPG") began to process claims for InPhonic-sponsored rebate offers.  In or around July 2006, the Services Agreement expired, and InPhonic has re-engaged Helgeson to process claims for InPhonic-sponsored rebate offers.

6.    Documents related to the rebates previously processed by CPG pursuant to the Services Agreement are maintained by CPG in Arizona.  However, with court approval, CPG has agreed to transfer to InPhonic any new incoming correspondence received by CPG that relates to claims for InPhonic-sponsored rebate offers.  InPhonic will process those rebate claims pursuant to its current arrangement with Helgeson.  CPG employees familiar with processing claims for InPhonic-sponsored rebates are located in Arizona.

7.    InPhonic employees periodically visited CPG's Tempe, Arizona facilities to observe the rebate processing services performed by CPG.  InPhonic did not station its employees onsite at CPG on a full-time basis.

8.    InPhonic's officers maintain their offices at InPhonic facilities in Washington, D.C. and Largo, Maryland.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.  Executed this 25th day of July 2006.

_____
Mitchell R. Berger

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE INPHONIC, INC. WIRELESS
PHONE REBATE LITIGATION

)
)
)
)

MDL No. 1792

EXHIBITS 1 THROUGH 5
TO REPLY MEMORANDUM OF INPHONIC, INC.
IN SUPPORT OF ITS MOTION FOR TRANSFER AND
CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

# Exhibit 1

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

DISTRICT OF COLUMBIA,                          *
a municipal corporation,                       *          u004390-06
441 4th Street, N.W.,                          *
Washington, D.C. 20001,                        *          Civil Action No. _____

    Plaintiff,                                 *          Judge _____

    v.                                         *          Calendar No. _____

INPHONIC, INC.,                                *
a Delaware corporation,                        *
1010 Wisconsin Avenue NW, Suite 600            *
Washington, DC 20005,                          *

    Defendant.                                 *
                                               *

RECEIVED
Civil Clerk's Office
JUN 0 8 2006
Superior Court of the
District of Columbia
Washington, D.C.

**COMPLAINT FOR PERMANENT INJUNCTION**
**AND OTHER EQUITABLE RELIEF, RESTITUTION, AND CIVIL PENALTIES**

Plaintiff, the District of Columbia, by its undersigned attorneys, alleges:

1. Plaintiff, the District of Columbia (hereinafter "Plaintiff") brings this action under the
District of Columbia Consumer Protection Procedures Act, D.C. Official Code §§ 28-
3904 and 28-3909 (2001), to secure a permanent injunction and other equitable relief,
restitution for consumers, and civil penalties against InPhonic, Inc. ("InPhonic" or
"Defendant") for its unlawful trade practices in connection with its marketing of wireless
telephones, wireless telephone service plans, and related services and devices ("wireless
phones and plans") to consumers throughout the United States.

2. This Court has jurisdiction over this matter pursuant to D.C. Official Code §§ 11-921
and 28-3909 (2001). This Court has personal jurisdiction over InPhonic pursuant to D.C.
Official Code §§ 13-422 and 13-423 (2001).

## Parties

3. Plaintiff is the District of Columbia, a municipal corporation, and brings this action pursuant to its authority under the District of Columbia Consumer Protection Procedures Act, D.C. Official Code § 28-3901, *et seq.* (2001).

4. InPhonic is a Delaware corporation, incorporated on December 27, 1999.

5. InPhonic's principal place of business is 1010 Wisconsin Avenue, NW, Suite 600, Washington, DC 20007.

6. InPhonic sells wireless phones and plans to consumers throughout the United States.

## Defendant's Business Practices

7. Defendant sells wireless phones and plans for wireless telephone service carriers such as Verizon Wireless, Cingular Wireless and T-Mobile USA, and also has purchased wireless telephones, and airtime for wireless telephone service, directly from such carriers for Defendant's own resale to consumers.

8. Defendant has advertised wireless phones and plans to consumers through various websites, including www.inphonic.com, www.libertywireless.com and www.wirefly.com.

9. Defendant obtains a large portion of its customers in response to its advertised offers of price rebates for consumers who purchase wireless telephones ("phones") and wireless telephone service plans ("plans"). Most of the advertisements offer wireless phones and plans as a package.

10. Defendant's advertisements prominently display the net prices of the phones after subtracting potentially-available rebates. Defendant's advertisements prominently claim that by purchasing a new plan with a phone, consumers will receive rebates that equal or

exceed the price of the phone, or that substantially reduce the price of the phone. Some of these advertisements claim that consumers will "make" money through their phone purchases: 'After Rebate You Make $_____.' Defendant's advertisements typically offer combinations of rebates that total from $100 to $400 for a consumer's purchase of a phone and plan.

11.  Defendant discloses the terms and conditions of its rebates on separate, less conspicuous 'back-pages' on its website, which consumers must 'click through' to uncover.  Defendant's 'back-pages' generally state that it will take 10 to 12 weeks to process rebate claims and that, in order to qualify for a rebate, consumers must submit various documentation evidencing their purchase of the phone and their maintenance of a service plan.  Consumers who use the website may proceed to purchase wireless phones and plans without clicking through to these back pages and viewing the terms and conditions of Defendant's rebate offers.

12.  Although Defendant's rebates are typically large relative to Defendant's prices, a majority of the consumers who purchase wireless phones and plans through InPhonic never receive the advertised rebates. For example, of those consumers who activated phone service through InPhonic in March 2004, less than half ever submitted a rebate request. Approximately 32% of those who activated phone service in that month ultimately received a rebate. Many consumers who purchase wireless phones and plans through InPhonic with the expectation that they will receive rebates are unable to obtain the advertised rebates, or are able to secure rebates only by following onerous procedures.

13.  Defendant indicates on its website that consumers who do business with InPhonic

3

will be able to obtain assistance from InPhonic if they have problems or questions about the products or services offered by InPhonic. Many consumers who use the contact methods provided by InPhonic, find that they receive only unhelpful automated responses, have difficulty reaching an InPhonic representative by phone, or find that the InPhonic representative is unhelpful.

<u>Defendant's Restrictive Rebate Conditions</u>

14. Defendant applies unusually restrictive conditions to its advertised rebates, making it difficult or impossible for consumers to obtain the advertised rebates. Defendant fails to disclose these restrictive conditions on the same pages as its advertised post-rebate prices.

    a.    In 2004, on the 'back-pages' of some of its rebate offers, Defendant stated in small print that, "you must include a bill dated at least 120 days after activation showing that the previous balance has been paid in full." However, in similarly small print, these pages also stated that the consumers' submission must be postmarked within 120 days from the activation date.

    b.    Between 2002 and 2005, on other rebate offers, Defendant stated, in small print on its 'back-pages,' that to qualify for rebates requiring consumers to maintain service for a period of 150 to 180 days, consumers must submit their rebate claims "no earlier than 180 days and no later than 210 days after your account is activated."

    c.    Additionally, between 2002 and 2005, on some of its rebate offers, Defendant stated, in small print on its back-pages, that consumers would not be eligible for rebates if they switched to another rate plan, changed

4

their phone number, 'ported' their existing phone number after activating

their new phones, or returned their phones.

<u>Defendant's Unreasonable Enforcement of Its Rebate Conditions</u>

15. Defendant's unreasonable enforcement of its unusually restrictive rebate conditions

makes it difficult or impossible for many consumers to obtain the advertised rebates,

often through no fault of their own. Between 2002 and 2006:

    a.     some consumers sent in the required documentation by certified mail, but

Defendant sent these consumers notices stating that it had not received the

documentation, and denied the consumers' rebate claims;

    b.     other consumers submitted their documentation in a timely manner, but

Defendant sent these consumers requests for additional information after

the deadline for submission of consumers' rebate claims had passed.

Defendant subsequently denied these claims as untimely;

    c.     defendant has failed to provide some consumers with rebate forms in a

timely manner, and initially provides other consumers with the wrong

address for submission of the rebate requests, and later denies these

consumers' rebate claims as untimely;

    d.     some consumers, who have rebate offers stating that they must maintain

their accounts in good standing for 180 days, have waited for their post-

180 day billing statement to show this fact. Defendant has denied these

consumers' rebate claims as untimely, notwithstanding the fact that

Defendant knew or should have known that the time constraints on their

rebate offers were causing consumer confusion.

16. Defendant's practice is to cite alleged errors in rebate submissions, even those seemingly caused by Defendant, as justification to unreasonably deny rebate requests of otherwise eligible consumers. Many consumers who attempt to dispute Defendant's denials of their claim get no response to their calls or emails to Defendant, receive only unhelpful 'form' responses, receive inconsistent or contradictory explanations as to why Defendant denied their claims, or are given misleading or ultimately incorrect information about Defendant's willingness to waive or correct an alleged error.

<u>Defendant's Hidden Charges</u>

17. In many of its advertisements, on the 'front pages' featuring its advertised prices, Defendant fails to disclose that consumers will be assessed additional charges, if they fail to satisfy certain post-purchase conditions. Many of Defendant's advertised prices include 'discounts' that Defendant does not include in its 'front page' calculation of costs. Defendant then charges consumers for these hidden discounts if they fail to meet certain conditions.

    a.    None of the 'front pages' of Defendant's advertisements mentioned a 'purchase discount' that is included in the total price of the phone and plan. Between 2002 and 2005, in small print on the back-pages of many of its advertisements, Defendant stated that it had provided a purchase discount of $250, in exchange for the consumer maintaining its wireless account for 180 days. Defendant further stated that it would automatically charge consumers' credit cards for this $250, without further notice, if the consumers switched their plans to a lower monthly service rate, or if the consumers failed to maintain service in good standing for 181 days. Some

consumers were unaware of this potential cost until the charge appears on their credit card statements.

b.     None of the 'front pages' of Defendant's advertisements mention 'equipment discount charge backs' as part of the calculation of the cost of the phone and plan. Between 2002 and 2006, in small print on the back-pages of many of its advertisements, Defendant states that, "to qualify and redeem the rebate, and to avoid an equipment discount charge back of $250, your rebate submission must be postmarked no earlier than 180 days and no later than 210 days after your account is activated." Many consumers are unaware that the advertised cost includes this 'equipment discount.' Some consumers who return defective phones, exchange defective phones, or return phones to InPhonic that they did not order, are charged for this 'equipment discount.'

18.  Defendant's advertised prices and inconspicuous disclosures of additional charges mislead consumers as to the actual prices they will pay for wireless phones and plans.

<u>Failure to Provide Advertised Customer Service</u>

19.  Although Defendant advertises the availability of customer service through several links on its website, such as "Check Your Order Status," "Contact Us," and "Help", as well as through customer service phone numbers listed on its websites and in its printed materials, many consumers are unable to obtain help or customer service from InPhonic.

a.     Many consumers send inquiries to InPhonic through its website, or by phone, and receive no response from Defendant in spite of multiple attempts to obtain assistance.

b.    Many consumers who send inquiries to InPhonic through its website, or over email, receive form replies from Defendant that are not responsive to their inquiries.

c.    Some consumers are given conflicting information from Defendant when speaking to different representatives of the company, or when comparing information obtained over the phone, with information available on Defendant's website, and are unable to get Defendant to reconcile the conflicting information.

d.    Some consumers who call Defendant are placed on hold for lengthy periods, and are unable to reach a representative of Defendant.

e.    Some consumers attempt to contact Defendant to get an explanation for their rebate rejection (e.g. how is the rebate submission illegible or incomplete), but are given no explanation, and no opportunity to correct an alleged error.

f.    Some consumers who are promised return calls, equipment or forms from Defendant, find that Defendant does not provide the requested information, equipment or forms.

g.    Some consumers who provide corrections or additions to their orders with Defendant, find that Defendant fails to process the new information.

h.    Many consumers who are unable to resolve their problems with a customer service or rebate representative of Defendant, are unable to obtain contact information for a supervisor or other management employee of Defendant.

20. Defendant's failure to provide customer service prevents many consumers from being able to obtain promised rebates, to dispute incorrect charges, to return defective equipment, or to obtain promised "free" equipment.

### Unlawful Trade Practices

21. Defendant prominently advertises post-rebate prices and cost savings without disclosing prominently, and in close proximity to these advertised prices, that consumers must comply with unusually restrictive and unreasonably enforced conditions to secure the advertised rebates and cost savings. As a result, many consumers are misled into paying more than the advertised post-rebate prices.

22. Defendant states on the 'back-page' of its advertisements that it will take 10 to 12 weeks to process rebate claims. Many consumers find that InPhonic fails to process their rebate claims within this period, which is at least nine months after their purchase of their phones and plans.

23. Defendant prominently advertised discounted prices without disclosing prominently, and in close proximity to these advertised prices, a) that the advertised prices included a revocable deduction for 'purchase discounts', and b) that Defendant would automatically charge consumers' credit cards for the 'purchase discounts' if within the first 180 days of their service plan, consumers switched to a plan with a lower monthly service rate, failed to promptly pay their service plan bills, or terminated their service plan (without upgrading to a higher-priced plan).

24. Defendant prominently advertises discounted prices without disclosing prominently, and in close proximity to these advertised prices, that the advertised prices include a revocable deduction for 'equipment discount charge backs' that InPhonic may assess

against consumers who return their phones, even if the phones are defective.

25. Defendant falsely advertises that it provides customer service to consumers who do business with it, when in fact many consumers who use the contact methods offered by Defendant find that they are unable to either reach an InPhonic representative or obtain assistance from InPhonic and are consequently unable to obtain promised rebates, dispute incorrect charges, return defective equipment or obtain promised "free" equipment.

Count I

26. Plaintiff re-alleges Paragraphs 1 through 25 and incorporates them herein by reference.

27. Defendant has violated the District of Columbia Consumer Protection Procedures Act by making misrepresentations, as to material facts, that have a tendency to mislead. D.C. Official Code § 28-3904(e) (2001).

Count II

28. Plaintiff re-alleges Paragraphs 1 through 25 and incorporates them herein by reference.

29. Defendant has violated the District of Columbia Consumer Protection Procedures Act by failing to state material facts when such failures tend to mislead. D.C. Official Code § 28-3904(f) (2001).

Consumer Injury

30. As a result of Defendant's unlawful acts and practices, consumers have suffered and continue to suffer monetary loss. In addition, Defendant has been unjustly enriched as a result of these unlawful practices. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public.

10

<u>Prayer For Relief</u>

WHEREFORE, Plaintiff pursuant to the District of Columbia Consumer Protection Procedures Act, and the Court's own equitable powers, requests that this Court:

1. Permanently enjoin Defendant from violating the District of Columbia Consumer Protection Procedures Act as alleged herein;

2. Award such restitution or other monetary or equitable relief for consumers as the Court finds necessary to compensate consumers for injury or damages suffered as a result of Defendant's violations of the District of Columbia Consumer Protection Procedures Act;

3. Order Defendant to pay civil penalties of up to $1000 per violation, for Defendant's violations of the District of Columbia Consumer Protection Procedures Act; and

4. Order Defendant to pay the costs and attorneys' fees of Plaintiff associated with this action, as well as such declaratory and additional relief as the Court may determine to be just and proper.

Dated: June 8, 2006

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

DAVID M. RUBENSTEIN
Deputy Attorney General
Public Safety Division

BENNETT RUSHKOFF # 386925
Chief, Consumer and Trade Protection Section

11

WENDY J. WEINBERG # 445460
Assistant Attorney General

Office of the Attorney General
441 4th Street, NW, Suite 450N
Washington, DC 20001
202-727-3500

Attorneys for the District of Columbia

Exhibit 2

**Appendix A.**
**Report on Motions Pending More Than Six Months,**
**Bench Trials Pending More Than Six Months, Bankruptcy Appeals Pending More Than**
**Six Months, Social Security Appeal Cases Pending More than Six**
**Months, and Civil Cases Pending More Than Three Years on September 30, 2005**

| District Judges and Magistrate Judges | Cases Pending | Motions Pending | Bench Trials Submitted | Bankruptcy Appeals | Social Security Appeal Cases |
|---|---|---|---|---|---|
| **DISTRICT OF COLUMBIA** | | | | | |
| **MAGISTRATE JUDGES** | | | | | |
| ROBINSON, DEBORAH ANN | 1 | 2 | 0 | | 0 |
| KAY, ALAN | 1 | 3 | 0 | 0 | 0 |
| FACCIOLA, JOHN M. | 6 | 0 | 0 | 0 | 0 |
| **SUBTOTAL** | 8 | 5 | 0 | 0 | 0 |
| **DISTRICT JUDGES** | | | | | |
| RESTANI, JANE A.* | 2 | 6 | 0 | 0 | 0 |
| POGUE, DONALD C.* | 2 | 9 | 0 | 0 | 0 |
| WALLACH, EVAN J.* | 1 | 2 | 0 | 0 | 0 |
| LAUGHREY, NANETTE K. (VJ) | 20 | 59 | 0 | 0 | 0 |
| OBERDORFER, LOUIS F. | 4 | 9 | 0 | 0 | 0 |
| PENN, JOHN G. | 25 | 35 | 0 | 0 | 0 |
| HOGAN, THOMAS F. (CJ) | 6 | 2 | 0 | 0 | 0 |
| LAMBERTH, ROYCE C. | 13 | 13 | 0 | 0 | 0 |
| KESSLER, GLADYS | 15 | 32 | 0 | 0 | 0 |
| FRIEDMAN, PAUL L. | 36 | 62 | 0 | 0 | 0 |
| URBINA, RICARDO M. | 6 | 0 | 0 | 0 | 0 |
| SULLIVAN, EMMET G. | 21 | 0 | 0 | 1 | 0 |
| ROBERTSON, JAMES | 15 | 0 | 0 | 0 | 0 |
| KOLLAR-KOTELLY, COLLEEN | 16 | 0 | 0 | 0 | 0 |
| KENNEDY, HENRY H., JR. | 17 | 20 | 1 | 0 | 0 |
| ROBERTS, RICHARD W. | 41 | 36 | 0 | 0 | 0 |
| HUVELLE, ELLEN SEGAL | 1 | 114 | 0 | 0 | 0 |
| WALTON, REGGIE B. | 6 | 0 | 0 | 0 | 0 |
| BATES, JOHN D. | 10 | 4 | 0 | 0 | 0 |
| LEON, RICHARD J. | 25 | 0 | 0 | 0 | 0 |
| COLLYER, ROSEMARY M. | 11 | 4 | 0 | 0 | 0 |
| UNASSIGNED | 1 | 14 | 0 | 0 | 0 |
| **SUBTOTAL** | 294 | 415 | 1 | 1 | 0 |
| **DISTRICT TOTAL** | 302 | 420 | 1 | 1 | 0 |
| **CIRCUIT TOTAL** | 302 | 420 | 1 | 1 | 0 |

* Court of International Trade Judge

(CJ) = Chief Judge
(VJ) = Visiting Judge

9

**Exhibit 3**

**FILED**

MAR 2 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**EDWIN DAVIS,** On behalf of himself
and all others similarly situated, as
defined herein,
10902 Bob White Drive
Houston, TX 77096

        Plaintiff,

        v.

**INPHONIC, INC.**
1010 Washington Ave, Ste. 600
Washington, DC 20007

        Defendant.

CASE NUMBER  1:06CV00528

JUDGE: Ellen Segal Huvelle

DECK TYPE: General Civil

DATE STAMP: 03/21/2006

**Consumer Class Action
Complaint**

**JURY DEMAND ENDORSED HEREIN**

*JURY ACTION*

## INTRODUCTION

Plaintiff Edwin Davis ("Representative Plaintiff"), individually and on behalf of all

others similarly situated, upon personal knowledge, information and belief, and based

upon, among other things, the investigation made by his attorneys, alleges as follows:

## NATURE OF THE CLAIM

1. This consumer class action arises from InPhonic, Inc.'s ("InPhonic") deceptive

and unlawful conduct in failing to honor rebates offered to its customers. Specifically,

the Representative Plaintiff brings this class action on behalf of a Class of consumers

who purchased products from InPhonic, or one of its subsidiaries, with the express

understanding that they would receive cash rebates after the purchase of said products,

who properly requested the rebate in accordance with Defendant's instructions, and who have not received cash rebates from InPhonic. ("Class Members" refers to both the Representative Plaintiff and Members of the Class defined at paragraph sixteen (16) of this Complaint).    As a result of the Defendant's unlawful conduct by failing to deliver rebates, misrepresenting the benefits, and failing to honor the terms of its advertised rebate program, the Defendant has violated state consumer protection statutes and caused Class Members and the Representative Plaintiff to incur monetary damages.

2.  On behalf of himself and all others similarly situated, the Representative Plaintiff seeks relief, including:  (a) an order certifying the action to be maintained as a Class action and ordering the Representative Plaintiff and the Representative Plaintiff's counsel to represent the Class; (b) compensatory and consequential damages; (c) punitive damages; (d) attorneys' fees; (e) costs of this suit; (f) pre and post judgment interest; and (g) such other and further relief as this Court may deem necessary or proper.

## THE PARTIES

3.  The Representative Plaintiff, Edwin Davis ("Representative Plaintiff"), resides at 10902 Bob White Drive, Harris County, located in Houston, Texas.  On or about January 2005, the Representative Plaintiff purchased a Motorola cellular telephone and signed a twelve (12) month service commitment with Verizon Wireless through Wirefly.com, a wholly owned subsidiary of InPhonic.  As an incentive to purchase these products and services through Wirefly.com, Davis was promised a $150 Customer Appreciation Rebate in addition to a $150 Customer Loyalty Rebate. The rebates

promised to the Davis totaled $300. Davis properly requested these cash rebates in accordance with Defendant's instructions and, over a year after his purchase, has still not received either of the rebates from the Defendant.

4.    The Defendant, InPhonic, Inc., is a Delaware corporation which provides online wireless services and devices. The company operates in three segments: Wireless Activation and Services; Mobile Virtual Network Operator (MVNO) Services; and Data Services. The Wireless Activation and Services segment sells and activates wireless services and devices through private-labeled Web sites that it creates and manages for third parties, including online businesses, member-based organizations and associations, and national retailers. It also sells through its own branded web sites, such as Wirefly.com. The MVNO Services segment markets and sells its own branded wireless services to consumers based on wireless airtime minutes. The Data Services segment provides subscribers with wireless access to work and personal information, including email, calendar, corporate directories, personal contacts, and documents, as well as wireless entertainment and content. InPhonic is headquartered at 1010 Wisconsin Avenue, Suite 600, Washington, D.C. 20007.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(2005). This Court also has jurisdiction over the Defendant because a substantial portion of the wrongdoing alleged in this Complaint took place in this state and because the Defendant is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its services in this state, to render the exercise of

3

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue in this Court is proper because the Defendant resides within the federal district of this Court.

## FACTUAL ALLEGATIONS

7. InPhonic was founded in 1997. InPhonic claims to be a leading online seller of wireless services and products. InPhonic sells services and goods and provides customer service through websites that it creates and manages for online businesses, national retailers, member-based organizations and associations under their own brands.

8. InPhonic also operates private-labeled, wireless plan comparison web sites, such as the one used by the Representative Plaintiff. These sites offer rebate incentives to encourage customers to purchase goods and services plans through them instead of directly from the wireless carriers. InPhonic has agreements with the six largest wireless carriers in the Unites States, as well as with several regional carriers, to sell their wireless devices and service plans.  Collectively these carriers' networks cover 99.8% of the U.S. population.

9. The Defendant, through both advertising and at the point of sale to consumers, has represented that consumers will receive a cash rebate from Defendant if consumers make specific purchases, provided that the consumers submit rebate request paperwork within a certain time period, and under certain conditions.

10. In order to comply with the conditions of the rebates given by the Defendant, consumers must do the following:

4

- Provide name, address and contact information;
- Provide purchase date, order number and mobile phone number;
- Read, sign and date rebate form;
- Provide a copy of the dated sales receipt;
- Provide a copy of the 12 digit UPC barcode;
- Provide a copy of the wireless bill showing customer name, mobile number, and bill/invoice date (must be dated between 150 days after activation and 210 days after activation) for the relevant account showing any previous balance paid in full;
- Provide a copy of the Guide to Wireless Service included with the customer's shipment that provides details of service plan activated with phone; and
- Entries must be postmarked no earlier than 180 days after activation and no later than 210 days after activation.

11. According to the Defendant, once a rebate form is submitted in a timely manner with the appropriate documentation the consumer will receive a check for the amount of the cash rebate within 10-12 weeks of receipt of the rebate request.

12. Many consumers who have purchased products and service plans from the Defendant with the express understanding that they were to receive one or more cash rebates after the purchase of the products, and who have properly requested such a cash rebate in accordance with Defendant's instructions, have received no cash rebate.

13. Defendant is aware that many of its customers are not receiving the rebates they were promised but continue to ignore and/or deny their claims in order to enjoy the obvious significant financial gain of such conduct. InPhonic has knowledge of statistics that prove after one or more failed attempts to claim a rebate, consumers will eventually give up and stop their pursuit. So, instead of honoring its obligations as promised, the Defendant has chosen to delay, deny and/or otherwise make the process of claiming a rebate so timely and frustrating that consumers give up, therefore leaving the Defendant with a great financial gain all while passing the burden along to class members.

5

14. Edwin Davis, the Representative Plaintiff, purchased a Motorola cellular telephone, as well as a Verizon service plan, on January 11, 2005 through Wirefly.com, a web site owned and operated by the Defendant. On June 28th, 2005, Davis submitted all the necessary paperwork in order to claim both a Customer Appreciation Rebate and a Customer Loyalty Rebate, each valued a $150.00. After waiting the 10-12 weeks as indicated by the Defendant, Davis began to question whether or not he would receive the cash rebate promised to him and eventually Davis contacted InPhonic to inquire about the status of his request. He spoke with a customer service representative who informed him that she was unable to locate his records and that he should resubmit his forms. On November 2, 2005, Davis sent a second letter to InPhonic, along all the appropriate documentation, and again requested that he be mailed his rebate checks. On January 11, 2006, Davis inquired as to the status of his rebate request at www.rebate-zone.com and was informed online that his request was "invalid." Once again, Davis contacted InPhonic and even went to the trouble of having a Verizon sales representative fax a copy of his statement indicating that his account is, and has always been, in good standing. Despite Davis' extensive efforts to redeem the rebates promised him by the Defendant, the Representative Plaintiff has yet to receive the rebates to which he is owed.

15. The Defendant is aware of the consumer frustration caused by its failure to honor rebates. Due to the Defendant's lack of response in resolving this widespread problem, consumers have taken to posting their complaints on the internet, in an attempt to express their frustration and attempt to inform others about the problem:

**Examples of Consumer Frustration**

6

It's impossible to get rebates from these people. I have made two attempts by mail, one attempt by fax, and several attempts by phone to retrieve my entitled rebates. The rebates due are $200.00. My forms were mailed to specification on December 15, 2005. Upon follow up on January 17, 2006, I learned that both of my mailed rebates were lost by the US mail service (which is awfully peculiar). I was then asked to fax the forms directly to their rebate center. After doing so, I was told the fax would not be accepted because my original letters were not mailed via registered mail. I then re-mailed all documents in separate envelopes again via registered mail on January 18, 2006. On January 31, I checked the status of my rebates at their website and learned that only one was received and it was rejected. I have reason to believe that all forms are correct and legible. I do not see any reason for rejection. [1]

* * *

Never received my rebate. Wire fly refused my rebates because I sent them to[sic] early. I called them within the time frame and asked them to send me my paperwork and they said they would. I never received anything. I kept on calling the office of the president and they never responded. Finally when they did, they said the time expired to file the rebates. so I am out $150. I will never do business with wirefly again. and I will jump on any class action suit. The instructions on the rebates are so confusing with the amount of days you have to wait to submit the forms. Just tell the customer upfront they won't be getting the rebate. At least be honest[2]

* * *

The way I look at this is that they have designed this process so that the consumer loses. If I lose they gain since they get to keep the money they promised me in the form of a rebate. It's one of the most complained about companies-more than 1400 people have filed complaints about them in the last 3 years. That alone tells you something about this company.
Elaine, Hillsboro, Oregon[3]

* * *

[1] http://www.resellerratings.com/seller7831-p2-s1-d1.html#reviews
[2] http://reviews.cnet.com/5208-7817-0.html?forumID=74&threadID=29922&messageID=1666956
[3] http://www.badbusinessbureau.com/reports/ripoff177219.htm

7

Got scammed. They asked me to send in all rebate information postmarked 180-210 days after purchased. I did. Every time I contacted them (not an easy proposition) they kept promising the rebate and then later after making me wait 8 weeks saying their was a reason for not honoring the rebate.

When you contact them they send you to a different center, promise to correct issues but never do, ask you to resubmit materials and then make you wait, send you notices that don't reflect the issues they claim to deny your claim... the list goes on.

Don't expect a rebate from this company. They do everything they can to deny a claim and will try to discourage you from pursuing legitimate claims with delay tactics and incompetence. This is a dishonorable business model. [4]

\* \* \*

This is a awful company ! They scam their way out of paying rebates that are due to their customers. They owe me $200 and refuse to pay me although I followed all instructions on the rebates to the T !! There is a article on msnbsc.com about how bad they are and people are getting together a class action lawsuit against them. AVOID AT ALL COSTS [5]

\* \* \*

When I purchased a phone from them, they listed a $50 customer appreciation rebate, which required that I send the first 3 months of billing statements, plus the form, and the UPC code, and the invoice within 120 days (purchased 10/14/04, due 2/11/05). When I received my 3 statements, I photocopied the first page (as requested) and sent the entire package on approximately 2/4. However, I received a letter from the rebate company that said the request was not postmarked in time. My calls to Inphonic have not been returned. There are numerous complaints about Inphonics on the internet that indicate this is not a one-time mistake. [6]

---

[4] http://www.shopping.com/xMR-Wirefly~MRD-315699~S-1~PG-5
[5] http://www.shopping.com/xMR-Wirefly~MRD-315699~S-1~PG-6
[6] http://www.consumeraffairs.com/cell_phones/wirefly.html

* * *

## CLASS ACTION ALLEGATIONS

16. The Representative Plaintiff maintains this action on behalf of himself and a Class defined as:

**All persons and entities who purchased goods and/or services, accompanied by one or more rebates, from Inphonic, Inc., or one of its subsidiaries.**

**Excluded from the Class are (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors, assigns, and employees, and (ii) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.**

17. The Class, as defined in paragraph sixteen (16), is identifiable. The definition of the Class is unambiguous. The Class can be identified through records in the control of the Defendant. The Representative Plaintiff is a Member of the Class that he seeks to represent. Class Members can be identified using the Defendant's records of retail sales and other information that is kept by the Defendant in the usual course of business and/or in the control of the Defendant. Records kept by the Defendant identify Class Members who purchased some product or service, with rebate, from Defendant . Class Members can be notified of the class action through publication and direct mailings to address lists maintained in the usual course of business by the Defendant.

18. Class Members are so numerous that their individual joinder is impracticable. Based upon Inphonic's historic sales, it is clear that Inphonic sold thousands, if not more, of products accompanied by rebates as an incentive for purchase. The precise

number of Class Members is unknown to the Representative Plaintiff, but it is clear that the number greatly exceeds the number to make joinder impossible.

19. Common questions of law and fact predominate over the questions affecting only individual Class Members. Some of the common legal and factual questions include:

a. Whether the Defendant fails to honor rebates;

b. Whether the Defendant has policies in place to deter customers from claiming rebates in a reasonable amount of time;

c. Whether the Defendant knew or should have known that the rebates that accompanying its products were not being honored;

d. Whether the Defendant engaged in illegal business practices by failing to honor rebates;

e. Whether the Defendant knowingly concealed the fact that they do not honor rebates in a timely manner;

f. Whether the Defendant purposely designed the procedure for claiming a rebate to be so cumbersome for consumers that they would likely give up without ever receiving any monetary compensation;

g. Whether the Defendant misrepresented that it had a price advantage in comparison to its competitors when they did not because its products were accompanied by a rebate that would never be honored;

h. The nature and extent of damages and other remedies to which the conduct of the Defendant entitles Class Members; and

i. Whether the Defendant violated state deceptive business practices statutes and/or consumer protection statutes.

20. The Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class Members. Similar or identical violations of

consumer protection statutes are involved.    Individual questions, if any, pale by comparison to the numerous common questions that dominate.

21. The injuries sustained by Class Members flow, in each instance, from a common nucleus of operative facts; the Defendant's misconduct.   In each case the Defendant failed to honor rebates given to its customers as incentives to purchase products.

22. Class Members have been damaged by the Defendant's misconduct. Class Members have purchased product(s) expecting to receive a cash rebate, without the knowledge that the rebate(s) would never be honored.

23. The Representative Plaintiff's claims are typical of the claims of the other Class Members. The Representative Plaintiff purchased product(s) from the Defendant expecting to receive a cash rebate(s), without the knowledge that the rebate(s) would never be honored by the Defendant.

24. The Representative Plaintiff will fairly and adequately protect the interests of the Class.   The Representative Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims.  The Representative Plaintiff's interests do not conflict with the interests of the other Class Members that he seeks to represent. Indeed, the Representative Plaintiff's interests are aligned with all other InPhonic customers.    The Representative Plaintiff has retained counsel competent and experienced in class action litigation, and intends to prosecute this action vigorously. The Representative Plaintiff's counsel has successfully prosecuted complex class actions from start to both multi-million dollar jury awards and settlements for the class, has participated in the litigation of large, complex class action litigation and has served

11

as part of the lead counsel in class actions involving more than one (1) million class members. The Representative Plaintiff and the Representative Plaintiff's counsel will fairly and adequately protect the interests of Class Members.

25. The class action device is superior to other available means for the fair and efficient adjudication of the claims of the Representative Plaintiff and Class Members. The damages suffered by individual Class Members may total less than one hundred dollars per individual Class Member. Damages of such magnitude are small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of the Defendant. Furthermore, it would be virtually impossible for Class Members to seek redress on an individual basis. Even if the Class Members themselves could afford such individual litigation, the court system could not.

26. Individual litigation of the legal and factual issues raised by the conduct of the Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the identical nature of Class Members' claims and the absence of material differences in the state statutes and common laws upon which Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violation of the State Consumer Protection Laws)**

27. The preceding paragraphs of this complaint are realleged and incorporated by reference and asserted by Representative Plaintiff on behalf of himself and members of the Class.

28. Plaintiff and the members of the Class are consumers who purchased goods and/or services from Defendant for, *inter alia*, personal, family, or household purposes.

29. Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the promotion, and sale of goods and/or services to Representative Plaintiff and the proposed Class Members.

30. Defendant violated this duty by misrepresenting the actual cost of the goods and/or services due to the failure to honor cash rebates that were used as an incentive for purchase.

31. Plaintiff and members of the Class were directly and proximately injured by Defendant's conduct and would not have purchased goods and/or services and/or paid as much for them had they known the true nature of the sale.

32. Defendant's deceptive representations and material omissions to Plaintiff and the proposed Class Members were, and are unfair and deceptive acts and practices.

33. Defendant engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiff and the proposed Class Members.

34. Plaintiff and Class Members were deceived by Defendant's misrepresentations.

35. As a proximate result of the Defendant's misrepresentations, Plaintiff and the proposed Class Members have suffered an ascertainable loss and are entitled to relief, in an amount to be determined at trial.

36. Defendant's actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of various state consumer protection statutes listed below:

(a)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

(b)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. Code § 40.50.471, *et seq.*;

(c)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*;

(d)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

(e)    Defendant has engaged in unfair competition or unfair or deceptive or unlawful acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code § 17500, *et seq.*; and Cal. Civ. Code § 1770 (a) (5), (7), and (9);

(f)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

(g)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

(h)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*;

14

(i)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq.*;

(j)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

(k)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. § 10-1-392, *et seq.*;

(l)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

(m)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

(n)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 505/1, *et seq.*;

(o)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

(p)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1b, *et seq.*;

(q)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

(r)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

(s)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

15

(t)     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

(u)     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

(v)     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

(w)     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

(x)     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

(y)     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

(z)     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.010, *et seq.*;

(aa)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

(bb)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

(cc)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

(dd)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

(ee)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

(ff)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

(gg)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

(hh)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

(ii)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

(jj)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

(kk)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made representations in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

(ll)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

(mm)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

(nn)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

(oo)    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

(pp)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

(qq)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

(rr)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

(ss)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-1 1-1, *et seq.*;

(tt)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, § 245 1, *et seq.*;

(uu)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

(vv)   Defendant has engaged in unfair competition or unfair, deceptive acts or fraudulent acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

(ww)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

(xx)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*; and

(yy)   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*

37. Representative Plaintiff and members of the Class were injured by Defendant's conduct, which created artificial demand for products and services at an artificially discounted price.  As a direct and proximate result of Defendant's unfair

methods of competition and unfair or deceptive acts or practices, Plaintiff and the Class have suffered actual economic loss by paying for goods and services at an artificially discounted price. The Representative Plaintiff and Class Members are entitled to damages, restitution, disgorgement, and/or such orders or judgments as may be necessary to restore to any person in interest, any money which may have been acquired by means of such unfair practices and to the relief set forth below.

## SECOND CAUSE OF ACTION

### (Violation of State Unjust Enrichment Common Laws)

38. The preceding paragraphs of this complaint are realleged and incorporated by reference and asserted by the Representative Plaintiff on behalf of himself and members of the Class.

39. To the detriment of the Representative Plaintiff and members of the Class, Defendant has been, and continues to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, *inter alia*, over-payments for goods and/or services.

40. Defendant has unjustly benefited through the unlawful and/or wrongful collection of, *inter alia*, over payments for goods and/or services and continues to so benefit to the detriment and at the expense of Plaintiff and members of the Class.

41. Accordingly, Plaintiff and members of the Class seek full restitution of the Defendant's enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, the Representative Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including the following:

19

A.     Certification of the action as a Class Action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiff's claims for injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages; and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.     Damages in the amount of owed cash rebates offered to Class Members;

C.     Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

D.     Pre-judgment and post-judgment interest on such monetary relief;

E.     Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged in herein;

F.     Other appropriate injunctive relief;

G.     The costs of bringing this suit, including reasonable attorneys' fees; and

H.     All other relief to which Plaintiff and members of the Class may be entitled at law or in equity.


March 20, 2006

John A. Peca (D.C. Bar #400996)
japeca@climacolaw.com
Keith T. Vernon, Esq. (D.C. Bar #484246)
ktvern@climacolaw.com
John R. Climaco, Esq. (Ohio #0011456)
jrclim@climacolaw.com
Joseph P. Fegen, Esq. (Ohio #0065714)
jpfege@climacolaw.com

P. Wesley Lambert, Esq. (Ohio # 0076961)
pwlamb@climacolaw.com
**CLIMACO, LEFKOWITZ, PECA, WILCOX &
GAROFOLI CO., L.P.A.**
888 16th Street, N.W.
Suite 800
Washington, D.C. 20006
Telephone: (202) 349-9864
Facsimile: (202) 349-9867


David P. Meyer, Esq. (Ohio # 0065205)
Patrick G. Warner, Esq. (Ohio #0064604)
**DAVID P. MEYER & ASSOCIATES CO., LPA**
401 North Front Street, Suite 350
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

***Counsel for the Representative Plaintiff***

Exhibit 4

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HONGYI YU,<br>1273 Briarberry Ct<br>San Jose, CA 95131, | ) ) ) ) | Case No. _____ |
| BARBARA McGIVNEY,<br>1808 Cornell Dr.<br>New Lenox, IL 60451, | ) ) ) ) | |
| on behalf of themselves and all others similarly<br>situated; | ) ) | Hon. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CLASS ACTION** |
| INPHONIC INC.<br>1010 Wisconsin Ave.<br>Washington, DC 20007 | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

## INTRODUCTION

Plaintiffs, Hongyi Yu ("Yu") and Barbara McGivney ("McGivney"), by and through their attorneys of record, hereby file this Class Action Complaint ("Complaint") on behalf of themselves and all similarly situated customers of Defendant, Inphonic, Inc. ("Inphonic"). Plaintiffs alleges upon personal knowledge as to themselves and their own acts, and upon information and belief based on the investigation of their counsel as to all other matters, as follows:

## PARTIES

1.     Plaintiff, Hongyi Yu, is a resident of the State of California who purchased a mobile phone and wireless phone services through Inphonic. Mr. Yu applied for, but never received the rebate described in this Complaint and offered by Inphonic.

2.     Plaintiff, Barbara McGivney, is a resident of the State of Illinois who purchased a mobile phone and wireless phone services through Inphonic. Ms. McGivney applied for, but never received the rebate described in this Complaint and offered by Inphonic.

3.     Defendant is a Delaware corporation. Inphonic's corporate headquarters are located in Washington, DC, and Defendant widely promotes this fact as part of its corporate profile and brand identification. Each of the wrongful trade and business practices alleged in this Complaint emanated from and had a nexus with Washington, DC.

## FACTUAL ALLEGATIONS

4.     This class action concerns a sophisticated internet retailer that has become a market leader in the sale of mobile phones and wireless services by offering rebates that purport to reduce prices below that of the competition. The online market for mobile phones and mobile phone service among third-party retailers is one of the most competitive because each retailer carries identical products and services. As a result, *price* is the primary factor in consumer purchasing decisions.

5.     Inphonic advertises low *after-rebate* sales prices to solicit clients though various Internet websites that it owns and/or operates, through in-store advertisements at major retailers, and through e-mail and Internet advertisements. For example, customers visiting Inphonic's Wirefly or Cellular Choices websites are told that a popular new phone, the RAZR V3c, will be **"FREE after rebate with a new Verizon Wireless account."** For many consumers, this will be a far more attractive option than purchasing the identical phone directly from Verizon Wireless

2

for $129.99. Similarly, most customers will find Inphonic's offer for a Motorola i836 phone, advertised as "Free after rebate" on Radio Shack's website, to be superior to Nextel's offer to sell the same phone for $149.99. The low prices, however, assume that the customer receives the promised rebates.



6.    Inphonic advertises many of its phones as **"Better than Free."** Potential customers are told that by purchasing certain phones through Inphonic, they will be entitled to a refund of up to $100.00. Inphonic's various sites tout that by buying certain phones "**You make $50.00.**" Another phone is advertised "**FREE Plus $60 Cash Back.**" All of these tempting offers depend upon the customer obtaining promised rebates.

| | | | Weight | Price | [Rebate] | |
|---|---|---|---|---|---|---|
| ☐ | **Motorola V276 (Camera Phone)** | Yes, VGA-quality (640 x 480 Pixels), Self-timer | 3.77 oz | $0.00 | You make $60.00 | Select > |

7.    Based upon these promised rebates, Inphonic's Wirefly division asks consumers to "Compare for yourself and you'll find nobody beats Wirefly's prices—on the Internet, in local stores or anywhere else." Inphonic's after-rebate prices allow it to beat all competitors in online price comparisons. According to Inphonic's own data, currently 70-80% of consumers research wireless service online.

8.    Inphonic advertises its post-rebate prices heavily on virtually all search engines and other websites. For example, a search on Google for RAZR finds the following two Inphonic advertisements.

**Free Motorola Razr v3**
www.cellularchoices.net    after $100 rebate with Cingular.
Verizon Razr also available here.

**Free Motorola Razr V3**
Choose black or silver. Bluetooth,
VGA camera. Free Shipping.
www.myrateplan.com

9.    The unfair and deceptive practices trade practices alleged in this Complaint allow Inphonic to claim lower prices than its competition and to dominate the online wireless market. As of March 2006, Inphonic claims that it is the "leading marketer and seller of wireless services on the internet," having achieved 1.1 million service activations in 2005. Inphonic represents

4

33% of the US online wireless activation market, versus 58% for the carriers, and only 9% for all others combined.

10.    Inphonic's Wirefly division claims that it is the number one seller of wireless phones and services on the web and one of the top five electronic websites. Inphonic's unfair and deceptive practices have led to exponential revenue growth, including a 107% jump in revenue between 2004 and 2005. Between 2004 and 2005, activations increased by 48%. Inphonic's expansion is partly carried out through major online retailers, such as Circuit City, Staples and RadioShack. Its marketing partners include Google, Yahoo, MSN, Buy.com, AOL, Sam's Club, and RadioShack. Inphonic retails through its owned brands and over 6,000 private label partners.

11.    Inphonic's growth and revenue derives in part from its development of business practices that limit the ability of customers to actually obtain promised rebates. Given the large size of promised rebates – up to $500 for many families – the rebate offer plays a primary role in purchasing decisions. Meanwhile, Inphonic is rewarded handsomely when rebates go unfulfilled or rejected.

12.    Customers make his or her purchasing decisions based upon the information presented in Inphonic's websites and online advertisements, and the actual purchase is made online. For example, Inphonic's websites allow customers to provide credit card information and enter into final, binding contracts. At the time the contract is entered into, consumers are given every reason to believe that they will ultimately receive the promised rebate.

13.    Inphonic's rebate offers fail to disclose that its rebates are subject to numerous material limitations. Thus, at the time of purchase, customers have no way of knowing that in fact the rebate offer that played a central role in their purchasing decision is subject to significant limitations and therefore may be illusory. These undisclosed limitations make the rebate offers

5

unfair and deceptive and are part of a sophisticated scheme to avoid paying rebates. Indeed, Inphonic conducts ongoing tests of its rebate offers in an effort to develop those that are most effective – most attractive for potential customers and the most difficult to redeem. The undisclosed limitations on Inphonic's rebates are disclosed below.

14.     ***Undisclosed limitation 1: Customers requesting a rebate will be required to agree to false statement of facts.***[1] For some or all of the Class Period, customers seeking to redeem a rebate were required to sign a statement agreeing to false statements of fact.

15.     For example, one widely used rebate form required the customer to sign a statement that read materially as follows:

> "In addition to this rebate, an equipment purchase discount of $250 has been provided to you in exchange for activating and maintaining a new, non-substitute wireless service mobile number on any commercially published wireless service rate plan for a minimum of 181 consecutive days."[2]

16.     This mandatory statement is, in fact, false and misleading because customers do ***not*** receive an equipment purchase discount of any amount. At the time of purchase, customers are told the "Price Today" or "Your Price", and the "Price After Rebates." The difference between these two numbers is the amount of the rebates. Having informed customers of the "Price Today" and "Your Price", they cannot later state that a higher price applied and was only reduced by a previously undisclosed "discount." Requiring customers to agree to this false factual statement as a condition of receiving a promised rebate renders the offer unfair and

---

[1]     Inphonic has made ongoing changes to its rebate offers during the Class Period, but ***all*** of the rebate offers entered into by Class members suffered from one or more of these material undisclosed limitations.

[2]     Some customers receive a rebate form stating that the equipment purchase discount is $150.

deceptive, and illusory for that segment of the customer base that is unwilling to agree to a false and misleading statement of fact as a condition of receiving a promised rebate.

17.     *Undisclosed limitation 2: Customers requesting a rebate will be required to agree to new and unfair contract terms.* Rebate forms also required customers to agree to new, unfair contract terms as a condition of obtaining the rebate. One widely used form stated:

> "Should the number disconnect (permanently or temporarily, except based on the fault of the Wireless Service carrier) from the chosen Wireless carrier, or if the customer's wireless service rate plan is changed to one of a lower service rate plan, with the same period (181 consecutive days), both this discount and the rebate will be null and void and the customer must reimburse this Authorized Carrier Representative $250. *The customer herein provides authorization for the $250 to be charged to the customer's credit card without need for further approval;* the $250 will only be charged if the monthly service rate is changed to one of a lower monthly service rate or if the wireless phone bill is not paid for 181 consecutive days.
>
> *I authorize that this $250 can be charged to my credit card and in the event that any legal action is necessary to collect the amount due I agree to pay any legal fees, collection fees, and court costs."[3]*

18.     Customers requesting a rebate were required to authorize the automatic refund a non-existent equipment purchase discount and agree to pay legal costs incurred by the company in obtaining the refund. These previously-undisclosed requirements render the original rebate offer unfair and deceptive, and illusory for that segment of the customer base that is unwilling to agree to a new and unfair contract term as a condition of receiving a promised rebate.

19.     *Undisclosed limitation 3: Rebate is null and void if Inphonic does not receive payment within 30 days.* The rebate form also stated for the first time that "This rebate will be

---

[3]     Customers whose rebate form claims an "equipment purchase discount" of $150 will require the customer to agree that $150 can be charged to their debit card.

7

null and void if all balances owed to Inphonic Inc. are not paid in full within 30 days of purchase date."

20.     All Inphonic customers are harmed by Inphonic's rebate requirements, including the requirement that customers agree to false and misleading factual statements and new and unfair contract terms as a condition of claiming the rebate. In addition, a significant portion of customers are prevented from obtaining promised rebates because of these practices.

21.     ***Undisclosed limitation 4:  Inphonic fails to timely distribute forms and information required for rebate requests.*** On a consistent basis, Inphonic fails to provide a significant portion of its customers with the information needed to redeem promised rebates including the proper rebate forms. Customers who do not receive the proper rebate forms find it virtually impossible to obtain the promised rebates, in part because of the poor customer service described below. During some or all of the Class Period, customers visiting the Inphonic website found that that they could not access correct, up-to-date rebate forms. A significant portion of customers is unable to receive promised rebates because of Inphonic's failure to timely provide needed information and proper rebate forms.

22.     ***Undisclosed limitation 5:  Inphonic's customer service is so poor that it materially limits customers' ability to request rebates.*** During the Class Period, Inphonic failed to provide customer service telephone numbers, failed to timely respond to customers' e-mails, and failed to timely respond to customer service inquiries and complaints. Inphonic's customer service fell far below industry standards and was contractually inadequate given Inphonic's extremely short and inflexible timelines for perfecting rebate applications. A significant number of customers were prevented from obtaining rebates because of Inphonic's poor customer service.

8

23.    During a portion of the Class Period, Inphonic's websites provided no customer service telephone number or other method for making timely contact with the company.

24.    During some or all of the Class Period, customers were given no avenue for customer service other than by sending an e-mail to the company detailing their complaint. The e-mail form provides several complaints to choose from, including that the rebate forms were not sent. However, Inphonic fails to promptly respond to these email inquiries and fails to promptly provide rebate forms.

25.    **_Undisclosed limitation 6:  Customers are not allowed to correct a minor error in the rebate request._**  When a customer submits a rebate application with a minor error or omission, Inphonic fails to provide the customer any opportunity to correct the error. For example, Inphonic consistently informs customers of minor errors and omissions in the rebate requests only after the narrow rebate window has closed.  This business practice has deprived a significant portion of customers from their promised rebates.

26.    **_Undisclosed limitation 7:  A portion of customers will not receive necessary paperwork from the wireless companies in time to request a rebate._**  Inphonic fails to disclose that the customer may find it impossible to comply with the inflexible deadlines for the rebate. For example, some of Inphonic's rebate forms require submission of the first, second and third wireless bills showing all balances paid in full, and requires that the third bill be dated within 120 days of the purchase date.  The rebate form then must be postmarked within 120 days of activation date.  Inphonic does not disclose to customers that a significant portion of customers will not receive their third bill from the wireless company in time to meet this deadline, or the third bill will not show the balance paid in full due to billing practices of the wireless carriers. These requirements and similar requirements imposed during the Class Period prevented a significant portion of customers from obtaining the promised rebates.

27.    *Undisclosed limitation 8:  Inphonic does not promptly process rebate requests.*
The rebate forms state that rebate checks will be received by customers within 10 to12 weeks of Inphonic's receipt of the customer's rebate requests.  Inphonic neither complies with this deadline nor processes rebate requests promptly.  This policy of delay causes significant harm to members of the Class and allows Defendant to enjoy undeserved profits in the form of interest and un-cashed rebate checks.

## JURISDICTION AND VENUE

28.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5 million and the parties reside in diverse jurisdictions.  Venue is appropriate in this District because Inphonic is headquartered in the District of Columbia and the acts alleged herein emanated from the District of Columbia.

## CLASS ACTION ALLEGATIONS

### In Support of Certification of Classes in under Rule 23(b) (1), 23(b) (2) and 23(b) (3)

29.    Plaintiffs brings this action individually and on behalf of the following similarly situated classes of Inphonic customers (collectively the "Classes"):

**Rebate Term Class:**  Customers who entered a contract with Inphonic for the purchase of a wireless phone and/or wireless services on or after May 19, 2003 whose contract included a rebate offer which was later found to be conditional upon the customer's agreement to false statements of fact and/or additional contract terms.

**Rebate Deprivation Class:**  Customers who entered a contract with Inphonic for the purchase of a wireless phone and/or wireless services on or after May 19, 2003 whose contract included a rebate offer and who were unable to receive such rebate due to one or more undisclosed material limitations on the rebate offer, including those described herein.

30.    The number of persons who are members of the Classes described above are so numerous that the joinder of all members in one action is impracticable.

10

31.    Questions of law and fact that are common to the entire Classes predominate over individual questions because the actions of Inphonic complained of herein were generally applicable to the entire Classes.

32.    All questions as to the representations and publicly disseminated advertisements and statements attributable to defendant at issue herein are similarly common.  A determination of Inphonic's knowledge regarding the misleading and deceptive nature of its rebate offers, its concealment of material limitations of its rebate offers, and its business practices depriving customers of rebates are likewise common.  A determination of liability as to the deceptive and misleading statements and representations and practices relating to Inphonic's marketing and promotion of its products and services, and rebate offers, its concealment of material information relating to the rebate offers, and its breach of contract will also be applicable to all members of the Classes.  Further, whether Inphonic violated any applicable state or federal laws and pursued the course of conduct complained of herein, whether Inphonic acted intentionally or recklessly in engaging in the conduct described herein and the extent of the appropriate measure of injunctive and declaratory relief, damages and restitutionary relief are common questions to all Classes.

33.    Plaintiffs' claims are typical of the claims of the members of the Classes because Plaintiffs purchased wireless phones and wireless services through Inphonic during the Class Period, and Plaintiffs are members of both the Rebate Term Class and Rebate Deprivation Class. Plaintiffs purchased products or services from Inphonic in reliance on the rebate offers and unaware of the conditions imposed on the rebate forms, and unaware of the material limitations on such offers.  These undisclosed material limitations ultimately deprived Plaintiffs and the members of the Classes of the promised rebates.

34.    Plaintiffs will fully and adequately represent and protect the interests of the Classes because of the common injuries and interests of the members of the Classes and the

11

singular conduct of Inphonic that is or was applicable to all Class members. Plaintiffs have retained counsel who is competent and experienced in the prosecution of class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those of the members of the Classes they seek to represent.

35.    A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

36.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Inphonic under the laws alleged herein.

37.    The claims of the Rebate Term Class should be certified under Rule 23(b)(1) and/or 23(b)(2) because that Class's claim focuses on the enforceability and legality of the terms imposed upon the rebate offers and proper remedies.   The Rebate Term Class primarily seeks declaratory and injunctive relief and separate actions would risk setting incompatible standards of conduct or could in a practical matter impair the interests of non-parties.

38.    The claims of the Rebate Deprivation Class may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3). The members of this Class also seek declaratory and injunctive relief but also seek sizeable monetary recovery equal to the rebates of which the members of this Class were deprived.

## FIRST CAUSE OF ACTION

### (Violations of District of Columbia Code Ann. § 28-3901)

39.    Plaintiffs incorporate by reference Paragraphs 1-38 of this Complaint.

12

40.    In this Complaint, Plaintiffs allege a nationwide class alleging violations of the District of Columbia Consumer Protection Act ("Act") on behalf of themselves, Class members, and the general public.

41.    The purpose of the Act is to assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices, to promote fair business practices throughout the community, and to seek proper redress of grievances. D.C. Code Ann. § 3901(b). The Act is construed and applied liberally to promote these purposes. *Id.* The business and trade practices of Inphonic, as alleged herein, constitute unfair and unlawful trade practices under D.C. Code Ann. § 28-3901(a)(6).

42.    The Act states in pertinent part:

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

(e)    misrepresent a material fact which has a tendency to mislead;

(f)    fail to state a material fact if such failure tends to mislead;…

(h)    advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; …

(j)    make false or misleading representations of fact concerning the reasons for, existence of, or price reductions, or the price in comparison to price of competitor's or one's own price at a past or future time; …

(r)    make or enforce unconscionable terms or provisions of sales or leases.

D.C. Code Ann. § 28-3904.

43.    Pursuant to the Act, a person, whether acting for the interest of itself, its members, or the general public, may bring an action for relief from unlawful trade practice and may seek the following remedies:

(A)    treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

(B)    reasonable attorneys fees;

(C)    punitive damages;

(D)    an injunction against the use of the unlawful trade practices;

(E)    in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practices; or

(F)    any other relief which the court deems proper.

D.C. Code Ann. § 28-3905(k)(1).

44.    Plaintiffs and Class Members have suffered and continue to suffer damages as a result of Defendant's use or employment of unlawful trade practices and are "consumers" within the meaning of, and are entitled to bring this class action, under D.C. Code Ann. § 28-3905.

45.    The conduct of Defendant, as alleged in this Complaint, constitutes deceptive and unfair methods of competition and/or trade practices, all impacting the public interest, in violation of D.C. Code Ann. § 28-3904. For example, but not by way of limitation, Inphonic's rebate practices contain both misrepresentations and omissions of material facts that tend to mislead and constitute a misleading representation of price reductions and comparison of prices in comparison to competition. Inphonic advertises after-rebate pricing and rebate programs that are contrary to its own intent to obstruct consumers' attempts to obtain promised rebates. Its representations that customers have received equipment discounts are false or misleading representation of fact about its own price at a past or future time. In addition, the terms of its rebate offers – once the fine print arrives in the mail -- are unconscionable, especially in the context of Inphonic's reliance upon after rebate pricing in its marketing.

46.    As a direct and proximate result of such wrongful activity, Plaintiffs and Class members have suffered and will continue to suffer substantial damages and Inphonic has been and will be unjustly enriched.

47.    The harm to each Class member, regardless of his or her residence in the United States, emanated from the District of Columbia, where Inphonic is headquartered. Each of the consumer transactions alleged herein emanated from and have a nexus with the District of Columbia. Thus, the Act applies to every the claims of every Class member, regardless of their location.

48.    Under the Act, Plaintiffs and Class Members are entitled to the greater of treble damages or $1,500 per violation, punitive damages, disgorgement of profits, recovery of reasonable attorneys' fees, and injunctive relief.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

49.    Plaintiffs incorporate by reference Paragraphs 1-48 of this Complaint.

50.    During the Class Period, Plaintiffs and each Class member entered into a contract with Inphonic that included a rebate offer.

51.    Inphonic has uniformly breached its contracts with Plaintiffs and the members of the Classes by (a) using its rebate forms to acquire agreement to false factual statements and new contract terms; (b) failing to disclose all material limitations on its rebate offers; (c) developing and implementing business practices that were designed to and that did deprive customers of their rebates; and (d) failing to act in good faith in its business practices with customers.

52.    As a proximate result of the aforementioned wrongful conduct and breach committed by Inphonic, Plaintiffs and Class members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial. Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## THIRD CAUSE OF ACTION

### (Negligent Misrepresentation)

53.     Plaintiffs incorporate by reference Paragraphs 1-52 of this Complaint.

54.     During the Class Period, Inphonic negligently and/or recklessly misrepresented its rebate offers and their limitations, its business practices designed to avoid payment of rebates, thereby making false, deceptive and illusory the benefit of the bargain to be received by Plaintiffs and the members of the Classes.

55.     These representations were negligently or recklessly made to potential customers and the general public through uniform representations on the Internet and by other means. As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and Class members have been damaged.

56.     Plaintiffs and Class members reasonably and actually relied upon the representations of Inphonic.  Based on such reliance, Plaintiffs and Class members purchased wireless phones and/or wireless services and as a result of Defendant's improper conduct have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

57.     Inphonic's acts and misconduct, as alleged herein, constitute oppression, fraud, or malice, thereby entitling Plaintiffs and Class members to recover an award of punitive or exemplary damages to the extent allowed in an amount appropriate to punish or to set an example of Inphonic.

58.     Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## FOURTH CAUSE OF ACTION

### (Fraudulent Misrepresentation, Concealment and Failure to Disclose)

59.    Plaintiffs incorporate by reference Paragraphs 1-58 of this Complaint.

60.    Inphonic knowingly, fraudulently and actively misrepresented, omitted and concealed from consumers material facts relating to its rebate offers, including their material limitations and the existence of business practices designed to avoid payment of rebates.

61.    The misrepresentations, omissions and concealments complained of herein were made on a uniform and market-wide basis.  As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and Class members have been damaged, as alleged herein.

62.    Plaintiffs and Class members reasonably and actually relied upon Inphonic's representations, omissions and concealments.  Such reliance may also be imputed, based upon the materiality of Inphonic's wrongful conduct.

63.    Based on such reliance, Plaintiffs and Class members purchased wireless phones and/or wireless services service from Inphonic and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

64.    Inphonic's acts and misconduct, as alleged herein, constitute oppression, fraud, or malice entitling Plaintiffs and Class members to an award of punitive or exemplary damages to the extent allowed in an amount appropriate to punish or to set an example of Inphonic.

65.    Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment and Disgorgement of Profits)

66.    Plaintiffs incorporate by reference Paragraphs 1-65 of this Complaint.

17

67.    Defendant has been unjustly enriched by overpayment by Plaintiffs and Class members and the resulting profits.

68.    Under common law principles of unjust enrichment, Defendant should not be permitted to retain the benefits of this unjust enrichment.

69.    Plaintiffs and Class members seek disgorgement of all profits resulting from such overpayment and the establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

### SIXTH CAUSE OF ACTION

#### (Declaratory and Injunctive Relief)

70.    Plaintiffs incorporate by reference Paragraphs 1-68 of this Complaint.

71.    Plaintiffs and Class members are entitled to declaratory relief establishing that Defendant is engaging in unfair and deceptive practices, that its conduct constitutes negligent and intentional misrepresentation and/or concealment and breaches contracts with consumers and violates applicable tariffs.

72.    Plaintiffs and Class members are entitled to a declaration that the false factual statements and additional contract terms included on the rebate forms are unenforceable. Inphonic should be enjoined from enforcing the additional contract terms or relying upon false statements of facts agreed to in the rebate forms.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Inphonic as follows:

1.    For economic and compensatory damages on behalf of Plaintiffs and all members of the Classes.

2.    For restitution;

3.    For disgorgement of ill-gotten gains as set forth herein;

4.    For treble damages or $1,500 per violation, whichever is greater, under D.C. Code Ann. § 28-3901.

5.    For punitive damages, as otherwise applicable;

6.    For injunctive and declaratory relief, as claimed herein;

7.    For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

8.    For such other and further relief as this Court deems just and appropriate

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 19, 2006

Respectfully Submitted,

By:_____
    Steven N. Berk

Jonathan W. Cuneo (DC Bar 939 389)
Steven N. Berk (DC Bar 432870)
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

Knoll Lowney
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, WA 98112
Telephone:  (206) 860-2883
Facsimile:  (206) 860-4187

19

Kevin P. Roddy
Jennifer Sarnelli (D.C. Bar No. 488512)
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095-0958
Telephone: (732) 636-8000
Facsimile: (732) 726-6686

**Attorneys for Plaintiffs**

**Exhibit 5**

**EICHEN LEVINSON & CRUTCHLOW, LLP**
40 Ethel Road
Edison, New Jersey 08817
(732) 777-0100
Attorneys for Plaintiff

RECEIVED-CLERK
U.S. DISTRICT COURT

2006 JUN 14  A 11: 16

|  |  |
|---|---|
| PAUL ROCK and MARY KAZMARCK, individually and on behalf of those similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>INPHONIC, INC,<br><br>Defendant. | : **UNITED STATES DISTRICT COURT**<br>: **FOR THE DISTRICT OF NEW JERSEY**<br>:<br>:    Civil Action No. 06-2156 (JLL)<br>:<br>:<br>:<br>:<br>:    AMENDED CLASS ACTION<br>:    COMPLAINT, JURY DEMAND<br>:    AND DESIGNATION OF CLASS<br>:    COUNSEL<br>: |

Plaintiffs, Paul Rock and Mary Kazmarck, individually and as class representative, by and through their counsel, Eichen Levinson, LLP, hereby claim against the Defendant as follows:

### INTRODUCTION

1.    This is a class action brought on behalf of all New Jersey consumers who purchased wireless telephones and devices that were eligible for a rebate from the Defendant, and against whom the Defendant committed deceptive, fraudulent and unlawful practices in conjunction with the processing and issuing of such rebates. Included in the deceptive, fraudulent and unlawful practices committed by the Defendant are the following:

a.    Failure to properly process valid rebate claim forms submitted by consumers;

1

b.    Refusal to issue rebates to consumers who had submitted valid rebate claim forms;

c.    Wrongful retention of class members' rebate funds beyond the time period specified in the purchasing agreements;

d.    Material misrepresentations and omissions regarding the actual rebate processing terms;

e.    The imposition of unconscionable rebate processing terms and conditions;

f.    The imposition of an unconscionable and unreasonable "window" of 180-210 days after activation of a telephone during which to submit a rebate claim form;

g.    Intentionally frustrating class members' attempts to receive the rebates to which they are legally entitled; and

h.    Conversion of class members' rebate funds to the Defendant's own use, rather than issue rebate checks to class members;

Each of the aforesaid acts constitutes common law fraud and/or a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*  This action seeks, *inter alia,* damages and compensation to all class members from the Defendant, interest, punitive damages, costs of suit, treble damages and attorneys' fees as permitted under the Consumer Fraud Act, injunctive relief requiring immediate payment of the rebates plus lost interest, and any other damages deemed just and proper by this Court.

## PARTIES

2.    Plaintiff Paul Rock is a citizen of New Jersey and resides at 20813 Shearwater Court, in Jersey City, County of Hudson and State of New Jersey.

3.    Plaintiff Mary Kazmarek is a citizen of New Jersey and resides at 302 Joseph Avenue, City of Linwood, County of Atlantic, and State of New Jersey.

4.    Defendant InPhonic, Inc., is a District of Columbia corporation duly organized and existing under the laws of New Jersey.  It is engaged in the business of selling wireless telephones and devices, and its headquarters are located at 1010 Wisconsin Avenue, Suite 600, in Washington, District of Columbia.

5.    At all times material hereto, Defendant acted by and through its employees, agents and servants, actual or ostensible, who then and there were acting within the course and scope of their duties, agency, employment and/or authority.

## JURISDICTION AND VENUE

6.    Jurisdiction is proper because Plaintiffs are citizens citizens of the State of New Jersey, and the Defendant purposefully avails itself of and regularly conducts business in the State of New Jersey and has sufficient minimal contacts therewith that maintenance of suit against the Defendant in this State does not offend traditional notions of fair play and substantial justice.

7.    Venue is proper pursuant to New Jersey Court Rule 4:3-2(a) and (b)/ 28 USC § 1391 because Plaintiff Rock resides in Hudson County, and the Defendant regularly conducts business in Hudson County, and many of the class members are located in Hudson County or transacted with the Defendant in Hudson County, and the Defendant is subject to personal jurisdiction in Hudson County and this judicial district.

3

## FACTS COMMON TO ALL COUNTS AND CLASS CERTIFICATION

8.    On May 25, 2005, Plaintiff Mary Kazmarck purchased and activated a wireless telephone that was eligible for a $100 rebate from the Defendant.

9.    On March 2nd, 2005, Plaintiff Paul Rock purchased a telephone that was eligible for a $100 rebate from the Defendant.

10.    The rebate contained an unreasonable and unconscionable condition that required the submission of rebate claim forms during a window of 180 days to 210 days after activation of the telephone. Rebate claim forms submitted before 180 days or after 210 days were automatically rejected by the Defendant.

11.    Notwithstanding, Plaintiff Mary Kazmarck submitted a rebate claim form on December 2nd, 2005, within the 180-210 day window.

12.    Although timely submitted, the Defendant rejected Plaintiff Kazmarck's rebate submission, deemed it invalid, and informed her: *"The wireless bill(s) we received are invalid."*

13.    Defendant also rejected Plaintiff Rock's rebate claim, and informed him: *"Your rebate claim was postmarked too late. Rebate claims must be postmarked between 180 and 210 days of activation."*

14.    After purchasing products eligible for Defendant's rebates, class members submitted valid rebate claim forms, but their rebate claims were wrongfully denied by the Defendant, whether they were submitted within the 180-210 days after activation "window" or outside said window.

4

15.    Defendant, as a matter of pattern and practice, has instituted and implemented unconscionable, fraudulent, and deceptive business processes intended to systemically deny class members' rebate claims.

16.    Defendant, as a matter of pattern and practice, has instituted and implemented unconscionable, fraudulent, and deceptive business practices and processes intended to systemically delay the class members' valid rebate claims, submitted pursuant to the Defendant's standardized Rebate Offers.

17.    At all times material hereto, the Defendant failed to properly disclose to Plaintiff and members of the class the terms and conditions for the processing of rebate claims.

18.    At all times material hereto, the Defendant, as a matter of pattern and practice, made material misrepresentation and omitted material facts regarding the processing of its Rebate Offer, with the aim of inducing class members into purchasing products ostensibly eligible for the Defendant's Rebate Offers, but which Rebate Offers the Defendant did not intend to honor.

19.    As a result of the Defendant's failure to pay rebates, Plaintiff and members of the class were deprived of the rebate moneys owed them by the Defendant.

20.    As a result of the Defendant's failure to pay rebates in a timely manner, Plaintiff and members of the class were deprived of the time value of the rebate moneys owed them by the Defendant.

## CLASS ACTION ALLEGATIONS

21.    Plaintiffs hereby incorporates the allegations of ¶¶ 1 through 20 as if fully set forth at length.

5

22.    This action is brought by Plaintiffs as a class action pursuant to New Jersey Court Rule 4:32/ Fed. R. Civ. P. 23, on behalf of themselves and a class of all similarly situated individuals.

23.    Plaintiff and thousands of individuals have purchased products eligible for rebate from the Defendant.

24.    The first proposed class consists of (i) all New Jersey individual consumers (ii) who purchased products eligible for a rebate from the Defendant pursuant to the Defendant's Rebate Offers, (iii) who submitted rebate claim forms within the 180-210 day window, (iv) whose rebate claim forms were processed by the Defendant in the manner complained of herein, and (v) whose rebate applications were denied by the Defendant.  Specifically excluded from the class are Defendant, any entity in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries and their assigns or any such entity, together with any immediate family members of any officer or employee of said companies.

25.    The second proposed subclass consists of (i) all New Jersey individual consumers (ii) who purchased products eligible for a rebate from the Defendant pursuant to the Defendant's Rebate Offers, (iii) who submitted rebate claim forms, (iv) whose rebate claim forms were processed by the Defendant in the manner complained of herein, and (v) whose rebate applications were denied by the Defendant on grounds of falling outside the 180-210 day window.  Specifically excluded from the class are Defendant, any entity in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries and their assigns or any

6

such entity, together with any immediate family members of any officer or employee of said companies.

26.    The third proposed class consists of (i) all individual consumers nationwide (ii) who purchased products eligible for a rebate from the Defendant pursuant to the Defendant's Rebate Offers, (iii) who submitted rebate claim forms within the 180-210 day window, (iv) whose rebate claim forms were processed by the Defendant in the manner complained of herein, and (v) whose rebate applications were denied by the Defendant. Specifically excluded from the class are Defendant, any entity in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries and their assigns or any such entity, together with any immediate family members of any officer or employee of said companies.

27.    The fourth proposed subclass consists of (i) all individual consumers nationwide (ii) who purchased products eligible for a rebate from the Defendant pursuant to the Defendant's Rebate Offers, (iii) who submitted rebate claim forms, (iv) whose rebate claim forms were processed by the Defendant in the manner complained of herein, and (v) whose rebate applications were denied by the Defendant on grounds of falling outside the 180-210 day window. Specifically excluded from the class are Defendant, any entity in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries and their assigns or any such entity, together with any immediate family members of any officer or employee of said companies.

28.    The proposed classes are so numerous that the individual joinder of all their members is impractical. The exact number of class members is unknown at this time and can only be ascertained through appropriate investigation and discovery of the Defendant's records. Plaintiff believes that the number of class members is in the thousands, if not in the tens or hundreds of thousands, of individuals. As a result, joinder of all class members in a single action is impractical.

29.    The classes are manageable, their members are identifiable through Defendant's business records, the first and second classes are concentrated in the State of New Jersey, and many of the third and fourth classes are located in New Jersey.

30.    There exists in this matter questions of law and fact arising out of Defendant's conduct which are common to all members of the class and which questions predominate over individual questions. Among the numerous questions of law and fact common to the class are:

a.    whether the Defendant's actions and activities violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*;

b.    whether the Defendant made material misrepresentations of fact, or omitted to disclose material facts, to Plaintiffs and the class regarding the terms and conditions associated with its rebate processing, which operated as a fraud and deceit upon the class;

c.    whether the Defendant was and is contractually obligated to pay rebates to Plaintiffs and members of the class within the time period specified in the Rebate Offers;

8

d.  whether the Defendant breached its contractual obligation by failing to pay rebates to Plaintiffs and members of the class pursuant to the Rebate Offers;

e.  whether the Defendant breached its contractual obligation by failing to pay rebates to Plaintiffs and members of the class within the time period specified in the Rebate Offers; and

f.  whether Plaintiffs and members of the class sustained damage and loss.

31.  Plaintiffs' claims are typical of the claims of the class members they seek to represent. Plaintiffs and all other class members sustained damages arising out of the Defendants' common course of conduct complained of herein. The amount of money is such that proceeding by way of class action is the sole economically feasible and sensible means for vindicating the injuries sustained by Plaintiffs and the class.

32.  The prosecution of separate actions by individual members of the class would risk inconsistent or varying adjudications which would establish incompatible standards of conduct for the Defendant, and incompatible rights for members of the class.

33.  Adjudication with respect to individual class members would, as a practical matter, prove dispositive of the interests of other class members not parties to the individual adjudications and/or substantially impede the ability of the non-party class members to protect their interests.

34.  The questions of fact and law common to the class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this action.

9

35.    Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained experienced counsel in complex civil litigation and said counsel has no adverse interests and is qualified to serve as class counsel. Plaintiffs understand the nature of the claims herein, have no disqualifying factors, and will vigorously represent the interests of the class. Plaintiffs, by agreement with counsel, has the resources available to prosecute this class fully and completely.

**COUNT I**

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**

36.    Plaintiffs hereby incorporates the allegations of ¶¶ 1 through 35 as if fully set forth at length.

37.    Defendant, acting as aforesaid, violated the New Jersey Consumer Fraud Act (hereinafter, "CFA"), N.J.S.A. 56:8-1 *et seq.*, by instituting and implementing unconscionable, fraudulent, and misleading business processes intended to outright deny or substantially delay Plaintiffs' and the class members' rebate claims.

38.    Defendant, acting as aforesaid, violated the CFA by the use or employment of unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of material facts regarding the Defendant's Rebate Offers, with the intent that Plaintiffs and members of the class rely upon such concealment, suppression or omission, in connection with the sale or advertisement of the Defendant's merchandise.

39.    Defendant, acting as aforesaid, violated the CFA by advertising its products, coupled with Rebate Offers, as part of a scheme or plan not to sell the products or services at the advertised price.

10

40.    Defendant, acting as aforesaid, violated the CFA by failing to properly disclose to Plaintiffs and members of the class the terms and conditions associated with the processing of rebates in accordance with the Defendant's Rebate Offer

41.    Defendant, acting as aforesaid, violated the CFA by making false and misleading misrepresentations to Plaintiffs and members of the class regarding the Defendant's Rebate Offers.

42.    Defendant, acting as aforesaid, violated the CFA by failing to disclose that the Defendant intended to process rebates in such an unconscionable and fraudulent manner so as to ensure the greatest number of denials for valid rebate applications submitted pursuant to the Defendant's Rebate Offers.

43.    Pursuant to the Defendant's Rebate Offers, Plaintiffs and others similarly situated were led to believe, in violation of the CFA, that the Defendant would honor its Rebate Offers and issue timely rebates to class members who submitted valid rebate claim forms.

44.    Defendant, acting as aforesaid, violated the CFA by its use of false and misleading representations in connection with the terms, conditions, and actual processing of the class members' rebate claims that were submitted pursuant to the Defendant's Rebate Offers.

45.    Plaintiffs and members of the class were falsely led to believe by the Defendant's standardized Rebate Offers, sales practices, conduct and representations, that their valid rebate claims would be processed by the Defendant in good faith, and in a manner designed to remit rebate checks, in a timely manner, to Plaintiffs and members of the class.

11

46.     Plaintiff and members of the class suffered an ascertainable loss as a result of Defendants' actions in violation of the CFA.

WHEREFORE, Plaintiffs demand judgment against Defendants, on their own behalf and that of the class, for compensatory damages, costs, treble damages, reasonable attorneys' fees, and any other relief as this Court deems just and proper.

## COUNT II

### COMMON LAW FRAUD

47.     Plaintiffs hereby incorporates the allegations of ¶¶ 1 through 48 as if fully set forth at length.

48.     The actions of the Defendant as set forth in Count I of the Complaint constitute fraudulent conduct, including but not limited to, knowingly making material misrepresentations and/or omissions regarding the terms and conditions of its Rebate Offers and the processing of Plaintiffs' and the class members' rebate claim forms, upon which misrepresentations and/or omissions Plaintiffs and members of the class reasonably relied and suffered loss thereby.

49.     Defendant made material misrepresentations and/or omissions to Plaintiffs and other class members by instituting and implementing, but failing to disclose, unconscionable, misleading and fraudulent business processes intended to wrongfully reject the Plaintiffs' and the class members' rebate claim forms, and to prevent Plaintiffs and members of the class from receiving the rebates promised them by the Rebate Offers

50.     Defendant made material misrepresentations and/or omissions to Plaintiffs and other class members by instituting and implementing, but failing to disclose, unconscionable, misleading and fraudulent business processes intended to wrongfully and

12

unreasonably delay Plaintiffs' and the class members' rebates promised them by the Defendant's Rebate Offers.

51.     Defendant made material misrepresentations and/or omissions via its standard Rebate Offer, sales practices and conduct, and falsely represented to Plaintiffs and members of the class that their valid rebate claim forms would be processed by the Defendant in a manner designed to ensure that Plaintiffs and the class members would receive the rebates promised them by the Defendant's Rebate Offers. Defendant instead processed Plaintiffs' and the class members' rebate claim forms in an unconscionable and fraudulent manner designed to procure the greatest number of rejections and denials of Plaintiff's and the class members' valid rebate claim forms.

52.     Defendant made material misrepresentations and/or omissions via its standard Rebate Offer, sales practices and conduct, and falsely represented to Plaintiffs and members of the class that their rebate claim forms would be processed by the Defendant in a manner designed to ensure that Plaintiffs and the class members would receive the rebates promised them by the Defendant's Rebate Offers in a timely manner, pursuant to the terms of the Rebate Offers. Defendant instead processed Plaintiffs' and the class members' rebate claim forms in an unconscionable and fraudulent manner designed to unreasonably delay Plaintiffs' and the class members' rebates.

53.     Defendant knew or should have known that the above-referenced misrepresentations and/or omissions were false and misleading.

54.     Plaintiffs and members of the class reasonably relied on the Defendant's misrepresentations and/or omissions, and as a result thereof Plaintiffs and members of the

class suffered loss in the amount of the rebates to which they were entitled pursuant to the Defendant's Rebate Offers.

55.     Plaintiffs and members of the class reasonably relied on the Defendant's misrepresentations and/or omissions, and as a result Plaintiffs and members of the class suffered loss in the amount of the time value of the rebate moneys owed them by the Defendant, which rebates were unreasonably delayed by the Defendant.

WHEREFORE, Plaintiffs demand judgment against the Defendant, on their own behalf and that of the class, for compensatory damages, including interest, punitive damages, costs of suit, and any other relief as this Court deems just and proper.

## COUNT III

### BREACH OF CONTRACT

56.     Plaintiffs hereby incorporates the allegations of ¶¶ 1 through 55 as if fully set forth at length.

57.     Defendant, acting as aforesaid, breached its standard Rebate Offer agreement with Plaintiffs and members of the class. Plaintiffs and members of the class suffered an ascertainable loss as a result of Defendant's breach of contract in the amount of the rebates denied them by the Defendant, and in the amount of the time value of the rebate moneys owed them by the Defendant, which rebates were unreasonably delayed by the Defendant.

WHEREFORE, Plaintiffs demand judgment against Defendant, on their own behalf and that of the class, for restitution, compensatory damages, including interest, specific performance, costs of suit, reasonable attorneys' fees, and any other relief as this Court deems just and proper.

## CERTIFICATION PURSUANT TO RULE 4:5-1

I certify that the matter in controversy is not subject to a proceeding in another

jurisdiction pending in New Jersey.

## DESIGNATION OF TRIAL COUNSEL

Barry R. Eichen, Esquire, is hereby designated as trial counsel.

## JURY DEMAND

Plaintiffs demand trial of all issues by jury.

**EICHEN LEVINSON & CRUTCHLOW, LLP**
Attorneys for Plaintiff and the Plaintiff Class

Dated: _6-12-06_          By: _____
                               Barry R. Eichen

## CERTIFICATE OF SERVICE



I hereby certify that on July 25, 2006, a copy of the foregoing Reply Memorandum of

InPhonic, Inc. in Support of its Motion for Transfer and Consolidation Pursuant to 28 U.S.C. §

1407, the Declaration of Mitchell R. Berger, and the exhibits accompanying the Reply

Memorandum, were served pursuant to J.P.M.L. Rules 5.12(a) and 5.2(a), by first-class mail upon:

John A. Peca
Keith T. Vernon
John R. Climaco
Joseph P. Fegen
P. Wesley Lambert
**CLIMACO, LEFKOWITZ, PECA,**
**WILCOX & GAROFOLI CO., L.P.A.**
888 16ᵗʰ Street, NW, Suite 800
Washington, DC 20006
  *Attorneys for Plaintiff Edwin Davis*

David P. Meyer
Patrick G. Warner
**DAVID P. MEYER & ASSOC. CO., LPA**
401 N. Front Street, Suite 350
Columbus, OH 43215
  *Attorneys for Plaintiff Edwin Davis*

Steven N. Berk
Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, NE
Washington, DC 20002
  *Attorneys for Plaintiffs Hongyi Yu*
  *and Barbara McGivney*

Knoll Lowney
**SMITH & LOWNEY**
2317 E. John Street
Seattle, WA 98112
  *Attorney for Plaintiffs Hongyi Yu*
  *and Barbara McGivney*

Kevin P. Roddy
Jennifer Sarnelli
**WILENTZ, GOLDMAN & SPITZER**
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
    *Attorneys for Plaintiffs Hongyi Yu*
    *and Barbara McGivney*

William F. Mahoney
Steven A. Hart
Scott W. Henry
Scott J. Vold
**SEGAL McCAMBRIDGE SINGER**
**& MAHONEY, LTD.**
One IBM Plaza, Suite 200
330 N. Wabash Ave.
Chicago, IL 60611
    *Attorneys for Plaintiff Ryan Sutherland*

Barry R. Eichen
**EICHEN LEVINSON**
**& CRUTCHLOW, LLP**
40 Ethel Road
Edison, NJ 08817
    *Attorney for Plaintiff Paul Rock*

Stephen M. Garcia
Sarina M. Hinson
**THE GARCIA LAW FIRM**
One World Trade Center, Suite 1950
Long Beach, CA 90831
    *Attorneys for Plaintiffs Walter Cover*
    *and Luis Morales*

Patrick J. McGroder III
Robert W. Boatman
**GALLAGHER & KENNEDY, P.A.**
2575 East Camelback Road
Phoenix, AZ 85016
    *Attorneys for Plaintiff Melinda Roquemore*

Bruce L. Simon
**COTCHETT, PITRE, SIMON**
**& McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
    *Attorney for Plaintiffs Luis Morales & Shelly Salzman*

Mark P. Friedlander, Jr.
**FRIEDLANDER, FRIEDLANDER &
EARMAN, P.C.**
1364 Beverly Road, Suite 201
McLean, VA 22101
*Attorney for Plaintiff Shelly Salzman*

Harvey Rosenfield
Pamela Pressley
**FOUNDATION FOR TAXPAYER AND
CONSUMER RIGHTS**
1750 Ocean Park Boulevard, Suite 200
Santa Monica, CA 90405
Facsimile: (310) 392-8874
*Attorneys for Plaintiff Shelly Salzman*

John I. Grossbart
David C. Jacobson
Katharine Elizabeth Stanton
**SONNENSCHIEN, NATH
& ROSENTHAL, LLP**
233 South Wacker Drive
8000 Sears Tower
Chicago, Illionois 60606
*Attorneys for Defendant
Continental Promotion Group, Inc.*

Jason Twining